Emil Milewski *v.* City of Philadelphia,
Appellant.

Argued October 8, 1976, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Ronald H. Beifeld,* Assistant City Solicitor, with him *James M. Penny, Jr.,* Assistant City Solicitor, *Raymond Kitty,* Deputy City Solicitor, and *Sheldon L. Albert,* City Solicitor, for appellants.

*Irvin Stander,* for appellee.

OPINION BY JUDGE ROGERS, November 10, 1976:

Franco Datillo, who is not a party to this appeal, purchased a property at the corner of Rhawn and Horrocks Streets in the City of Philadelphia in or about the year 1973. As is customary in Philadelphia, the realtor who negotiated the sale ordered a so-called Certification Statement from the Department of Licenses and Inspections, the purpose of which is to reveal any zoning violations concerning the property appearing in the City's records. The Certification Statement received stated that the present use of the property was legal. The description of the use appearing on the Certificate was, however, "Grocery & Meat Market."

Datillo's property is located in a C-Commercial zoning district but adjoins an R-5 Residential district. The building located on the property was and has been used as a grocery and meat market for many years. The subject of this lawsuit, however, is the legality of the continued existence of a fruit and vegetable

stand—a structure consisting of boxes and crates, a canvas awning and wire mesh sides—which is now and has been for about 18 years, located on the sidewalk of Rhawn Street adjacent to the building. The fruit and vegetable stand may have been conducted by a former owner of the property but Datillo has rented it to another for an undisclosed sum of money.

It is conceded that the fruit and vegetable stand is an illegal nonconforming use of Datillo's property. It violates two provisions of the City's zoning ordinance, the first one providing that every structure be set back at least eight feet from the building line,[1] and the second a requirement that every use in the district be conducted within a completely enclosed building.

The appellee in this appeal, Emil Milewski, complained to City authorities of the existence of the fruit and vegetable stand. Datillo applied for a zoning permit which was refused by the Department of Licenses and Inspections. Datillo appealed from the action of the Department of Licenses and Inspections to the Board of Adjustment, pleading unnecessary hardship, which we interpret as a request for a variance. In any event, the Board of Adjustment, after hearing, granted a variance. Mr. Milewski appealed the Board's action to the Court of Common Pleas which, without taking additional evidence, reversed the Board. Datillo has not appealed the lower court's decision but, curiously, the City of Philadelphia has. It has printed the substantial record and an assistant city solicitor has vigorously briefed and argued that this unlawful, nonconforming, and we might add, based on photographs appearing in the record, inappropriate activity should be allowed as a variance to the requirements of the City's ordinance applicable

---

[1] The fruit and vegetable stand occupies the entire eight foot setback space along most of the Rhawn Street frontage.

to every other property in the C-5 Commercial zoning district.

No compelling showing of unnecessary hardship was provided at the Board of Adjustment hearing. Datillo pleaded innocence of any knowledge of a violation but provided no evidence as to the amount of rent he would lose by the loss of his tenant of the Rhawn Street sidewalk or any other harm he would suffer if the fruit stand should have to be removed.

The City, in defense of the Board of Adjustment's decision, primarily relies upon *Sheedy v. Philadelphia Zoning Board of Adjustment,* 409 Pa. 655, 187 A.2d 907 (1963), where our Supreme Court held that a variance should have been granted to applicants who in 1952 purchased a five unit multi-family dwelling which had been in existence since 1935, a date only two years after the enactment of a zoning ordinance permitting only single family dwellings in the district in question. Mr. Chief Justice BELL who wrote the opinion in *Sheedy, supra,* calls the case "exceptional" and "very unusual" and says that the Board of Adjustment, which had refused the variance, did not "appreciate the enormous expenditures which would be necessary" to reconvert the interior of the property to a single family dwelling. Further, Mr. Chief Justice BELL reports as a finding of fact in the case that the Sheedys bought the property believing in good faith and with justification that its then existing and prior long-continuing use was a lawful use, that is, one antedating the passage of the ordinance.

The zoning ordinance of the City of Philadelphia was adopted in 1933. The Board of Adjustment's hearing in the instant case was held in 1975. Assuming that the unlawful use of the Rhawn Street sidewalk commenced 18 years previous to that date, it would have been established in 1957, some 24 years after the adoption of the zoning ordinance not, as in *Sheedy, supra,* only two years after the adoption of

regulations. The City's argument that Datillo was misled by the Department of Licenses and Inspections' Certification Statement is untenable because the Statement fails to record the fact that a fruit and vegetable stand existed on the property. There is testimony in the record that these Certification Statements are routinely issued based, not on an inspection of the property, but on records of violations on file in various City offices. Indeed the Statement in this case certifies that it is based only on a review of records.

We find nothing in this record which would support a finding that Datillo believed or had any reason to believe that the fruit and vegetable stand was a lawful nonconforming use—that is, one which had been engaged in since prior to 1933.

A case much closer to the instant case is *Hasage v. Philadelphia Zoning Board of Adjustment,* 415 Pa. 31, 202 A.2d 61 (1964), where our Supreme Court reversed a Common Pleas Court, which in turn had reversed a Board of Adjustment's refusal of the grant of a variance to a purchaser of a five family dwelling in a single family zoning district. The purchasers in *Hasage* bought the property in innocence of violation and would be put to considerable expense in renovation. The Supreme Court seems to have held that mere inaction by the City would not create rights in the owner.

*Sheedy, supra,* and *Heidorn Appeal,* 412 Pa. 570, 195 A.2d 349 (1963), where again the Supreme Court sanctioned a variance for an illegal nonconforming building in unusual circumstances must be confined to their facts.

The facts of the instant case: that the illegal use commenced some 24 years after the adoption of the ordinance, that the present owner failed to prove the amount of the loss which he would incur by being required to comply with the ordinance, ·and that the

Certification Statement, on which reliance is now placed, failed to note the presence of the illegal fruit and vegetable stand, clearly distinguish this case not only from *Sheedy, supra,* and *Heidorn, supra,* but from our interesting recent case of *Township of Haverford v. Spica,* 16 Pa. Commonwealth Ct. 326, 328 A.2d 878 (1974), where we held that the combination of the issuance of an improvident permit for a commercial use in a residential district and township inaction for 36 years created a vested right in a subsequent owner to use the property for office purposes. In the instant case no permit for the unlawful use was ever issued and we know of no case which holds that mere inaction by the municipality will justify a variance in the absence of the direct harm to a completely innocent owner.[2]

## ORDER

AND Now, this 10th day of November, 1976, the order of the Court of Common Pleas of Philadelphia County reversing the Board of Adjustment grant of a variance be and it is hereby affirmed.

---

[2] The cases are collected in Ryan, Pennsylvania Law and Practice, at Sections 8.3.4 and 8.3.5 for those who might care to read them and attempt to devise general rules of law applicable to all conceivable circumstances.