Eugene C. Bevans and Marie C. Bevans, his wife, Appellants *v.* Township of Hilltown, Appellee.

Argued December 16, 1982, before Judges BLATT, CRAIG and DOYLE, sitting as a panel of three.

*William R. Cooper,* with him *Stewart J. Greenleaf, Cooper & Greenleaf,* for appellants.

*Jeffrey A. Drake,* with him *Charles S. Wilson, Charles S. Wilson & Associates,* for appellee.

OPINION BY JUDGE CRAIG, February 22, 1983:

Mr. and Mrs. Eugene C. Bevans, as landowners, appeal a zoning decision of the Bucks County Court of Common Pleas, which ordered them to cease operation of their trucking enterprise in Hilltown Township.

The facts leading to the appeal are as follows:

On August 26, 1977, the owners bought property located in a district zoned Rural Residential (RR) under the township's zoning ordinance. The previous owner, who had owned the land since 1949, was a general contractor, who, on occasion, had parked several of his trucks on the premises.

After purchasing the property, the owners built a parking lot and facilities to service and accomodate an average of nine trucks daily.[1] On October 19, 1979, a township zoning officer, categorizing the owners' enterprise as a truck terminal, served them with an order to stop their operation, on the ground that their use was not permitted in an RR district. Because they did not comply, the township ultimately filed a complaint in equity to enjoin the trucking operation.

---

[1] The Bevans built the garage after receiving a building permit from the township zoning officer. We consider that permit in the portion of this opinion concerning vested rights.

Before addressing the zoning question, we must first consider the owners' procedural claim. The Bevans had responded to the township's complaint by filing an answer and new matter. The township replied to the new matter, often responding as follows: "Denied. It is denied [reiteration of averment]." The owners contend that, under Pa. R.C.P. No. 1029(b),[2] the township's general denial must be construed as an admission.[3]

However, we need not focus on whether the general denials constituted admissions[4] because, shortly after the trial began, the common pleas court allowed the township to amend its pleadings to respond to the new matter in a more thorough manner. The owners con-

---

[2] Rule 1029(b) provides:

(b) Averments in a pleading to which a responsive pleading is required are admitted when not denied specifically or by necessary implication. A general denial or a demand for proof, except as provided by subdivision (c) of this rule, shall have the effect of an admission.

[3] The owners raised the same issue when they filed a motion for judgment on the pleadings, which the common pleas court denied on July 22, 1980.

[4] However, we note that the existence of a general denial in the pleadings does not automatically constitute an admission. A court, in deciding a motion for judgment on the pleadings, must look to the overall pleadings, beginning with the complaint to determine if the plaintiff has admitted those statements. *Milk Marketing Board v. Ohio Casualty Ins. Co.*, 25 Pa. Commonwealth Ct. 371, 360 A.2d 788 (1976). In order for defendants to be successful on their motion, they must show that after a review of all of the pleadings, it is "clear and free from doubt" that plaintiff has admitted the statements. *Waldman v. Shoemaker*, 367 Pa. 587, 80 A.2d 776 (1951). Furthermore, many of the averments contained in the new matter were conclusions of law to which no reply is required. *See Srednick v. Sylak*, 343 Pa. 486, 492-93, 23 A.2d 333, 337 (1941) ("The general rule is that admissions of fact in pleadings are admissible but that the pleader's conclusions of law are not admissions of facts in issue.").

tend that the trial court abused its discretion in allowing the amendment of the pleadings, which they allege had a prejudicial effect, because the township was able to introduce the defense of abandonment of a nonconforming use and raise for the first time its technical position that it intended to rely upon a Public Utility Commission (PUC) certificate issued to the Bevans to support its theory that they were conducting a truck terminal.[5]

The right to amend pleadings is ordinarily a matter resting in the sound discretion of the trial court. *Puleo v. Broad Street Hospital,* 267 Pa. Superior Ct. 581, 407 A.2d 394 (1979). Furthermore, amendments should be allowed with great liberality at any stage of the case. *Id.*[6]

However, amendments to pleadings will not be permitted if undue prejudice would result to the pleader's opponent, *Bata v. Central Penn National Bank,* 448 Pa. 355, 293 A.2d 343 (1972), or deprive him of some substantive right. *First National Bank v. Tomichek,* 140 Pa. Superior Ct. 101, 13 A.2d 126 (1940).

Here, however, there was no prejudicial effect in the trial judge's decision to allow the amendments to the pleadings. The court found that the use of the property differed from that of the previous owner's, and, therefore, the issue of abandonment had no bearing on the outcome of the case. Also, as to the PUC certificate, the trial court's decision did not base its rationale for finding a truck terminal on that certificate. Therefore, we conclude that the trial judge's decision to allow the township to amend its pleadings did not result in prejudice to the Bevans.

---

[5] The 1980 amendments to the ordinance included the definition of "trucking terminal," as "any trucking terminal licensed by the Public Utility Commission."

[6] In *Puleo,* the trial court allowed a party to amend its pleadings even after a judgment on the pleadings already had been entered.

We now focus on the pivotal question in this appeal: Was the trucking operation a permitted use in the RR District?

Arguments have centered on whether the owners were operating a "truck terminal," a use that has been prohibited expressly in the RR district since the present zoning ordinance became effective June 11, 1977,[7] or a "trucking business," a use first expressly characterized as prohibited in the RR district by the ordinance amendments enacted in 1980.

The parties' emphasis on ascertaining which uses are *prohibited* in an RR district, rather than on which are *permitted*, stems from their preoccupation with section 404 of the ordinance, which is written as a tabular matrix listing seventy-six uses and indicating whether each use is a permitted use, nonpermitted use, conditional use or special exception within each type of district.

However, in approaching the mutually acknowledged issue—the permissibility of trucking activity in RR—by debating the owners' concept of truck "terminal"[8] versus the township's view of what a "ter-

---

[7] The previous township zoning ordinance was enacted in 1959 and revised in 1970.

[8] Before the 1980 amendments, "truck terminal" was the only trucking use listed, and it was expressly prohibited in an RR district. The ordinance did not define "truck terminal," before 1980. The 1980 amendments listed two additional uses, "Truck and/or Bus Storage Facility" and "Trucking Business," which were not permitted in an RR district. Also, the 1980 amendments defined those uses and "truck terminal" as follows:

Truck and/or Bus Storage Facility—"any lot or tract of land which is utilized for the parking and/or storage of two or more commercial-type trucks, and/or commercial type vans and/or buses, whether or not said vehicles are registered and/or inspected. A commercial-type truck or van is defined as a vehicle primarily utilized for a commercial purpose, and is exclusive of privately owned pick-up trucks, vans, and jeeps primarily utilized for recreational, non-

minal'' is,[9] the parties have failed to be guided by other important terms of the ordinance in the record before them.

Splitting hairs over whether the operation is a truck terminal or a trucking business is not necessary because section 400 of the ordinance plainly provides:

Except as provided by law or in this Ordinance, in each district no building, structure, or land shall be used or occupied except for the purposes permitted in section 404 and for the zoning districts so indicated.

Thus, unless a use is expressly permitted, it is prohibited. Because no trucking use has ever been expressly permitted in the RR district during the period involved here, all trucking uses have been barred in that district, even though not listed in the table as prohibited. Therefore, the operation was not and is not a permitted use.[10]

We must next decide whether or not the operation is a continuation of a legal nonconforming use conducted since the previous owner's occupancy. Specifically, we must determine whether the use is similar to or different than that of the previous owner. *See Han-*

---

commercial private uses. Trucks and vans in conjunction with agricultural uses are not included as commercial-type trucks or vans herein.'' Section 264.

Trucking business—"any trucking operation which has as its principal use the maintenance, leasing, operation of trucks, including any business which is primarily engaged in the trucking business, exclusive of those uses included in the term 'Truck Terminal'." Section 266.

Truck terminal—"any trucking terminal licensed by the Public Utilities Commission." Section 265.

[9] The township and trial court relied on dictionary definitions which indicate that a truck terminal is "a part that forms the end; either end of a carrier line (as a railroad, trucking or shipping line)." Webster's Seventh New Collegian Dictionary.

[10] The 1980 amendments do not alter this analysis because even under those amendments no trucking use is permitted in an RR district.

*na v. Board of Adjustment*, 408 Pa. 306, 313-14, 183 A.2d 539, 543-44 (1962) ("The non-conforming use which is within the orbit of protection of the law and the Constitution is a non-conforming use which exists at the time of the passage of the zoning ordinance or the change in a use district under a zoning ordinance, not a *new* or *different* non-conforming use.")

The trial court, in its findings of fact, found that the previous owner was a general contractor, but that "at no time did he ever conduct his business on the subject property . . . [although] he did own two pick-up trucks and a flatbed truck that were parked on said premises from time to time. When these vehicles were on the premises, they were parked in the garage overnight." In comparison, the court found that the owners "use seven dump trucks and two pick-up trucks in their business. These vehicles are parked out-of-doors on the subject premises overnight. In addition, the [Bevans] repair the trucks, fuel them and wash them out-of-doors on the premises. No business office is maintained away from the subject property by the [Bevans]. Business calls regarding the delivery and hauling of stone are taken by the [Bevans] in their home on the subject property." Furthermore, the Bevans have "six employees who report to [the] property every morning . . . , warm up the trucks, leave to pick-up and deliver stones with the trucks, then return the trucks to this property at the end of the day. These employees leave their own cars on the subject property during their working hours." In short, unlike the Bevans who clearly conduct business on the premises, the trial court found that the previous owner "used his premises as his residence and did not do work on his property."

Given those significant differences, and recognizing that the burden is on the property owner to establish the existence of a previous nonconforming use,

*Little v. Zoning Hearing Board of Abington Township*, 24 Pa. Commonwealth Ct. 490, 357 A.2d 266 (1976), we cannot say that the trial court abused its discretion in concluding that the present owners' use was different,[11] and, therefore, not a continuation of any nonconforming use the previous owner may have had.[12]

The owners next assert that they are entitled to continue their trucking operation under either a vested rights[13] or laches[14] theory. They contend that: (1) the township has allowed parked trucks on the premises since the previous owner's occupancy in 1949; (2) a township zoning official told the Bevans before they purchased the property that they could store trucks on the property; and (3) a zoning official issued the Bevans a building permit to build a garage for con-

---

[11] Although an owner can expand a nonconforming use, *see Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969), as discussed, the trial court found that the Bevans' operation constituted a different use than that of the previous owner.

[12] Although the trial court did not rely on the issue of the previous owner's abandonment of his nonconforming use, we note that the record indicates that the previous owner had retired approximately nine years before he sold the property, that he was using the property only as his residence, and, that he may have abandoned any nonconforming use which he might have had. The ordinance provides that once a use has changed to a conforming use (here, back to a residence), no structure or land shall be permitted to revert to a nonconforming use. Section 607 of the ordinance.

[13] "A property owner who uses his property in obvious violation of a zoning ordinance for a long period of time and with apparent acquiescence of the municipality acquires a vested right in such use." *Appeal of Kates*, 38 Pa. Commonwealth Ct. 145, 152, 393 A.2d 499, 502 (1978).

[14] Laches may be imputed to a municipality that has stood aside and permitted large expenditures to be made upon the faith of an irregular order of court, or of municipal consent informally or tacitly given, where formal consent would have been effective. *Heidorn's Appeal*, 412 Pa. 570, 195 A.2d 349 (1963). *But see Ignelzi v. Zoning Board of Adjustment*, 61 Pa. Commonwealth Ct. 101, 433 A.2d 158 (1981) (*Heidorn* limited to its unique facts).

ducting truck repairs. The garage and the adjacent parking lot cost $16,000 to construct.

As to the township's alleged acquiescence, as we have discussed above, the court found that the Bevans conducted a different use than the previous owner. Furthermore, mere inaction by a municipality will not justify a variance to permit the continuance of an unlawful use, at least in the absence of evidence of direct injury to an owner who is completely innocent. *Milewski v. City of Philadelphia,* 27 Pa. Commonwealth Ct. 59, 365 A.2d 680 (1976).[15]

In *Hasage v. Philadelphia Zoning Board of Adjustment,* 415 Pa. 31, 202 A.2d 61 (1964), the landowners purchased property which was being used in clear violation of the zoning ordinance. Although the ordinance had been enforced as to that property for eleven years, the landowners gained no right to use their property in the unlawful manner. The court said that a simple check of the zoning status of the property would have revealed that the use was unlawful.

Significantly, as to the alleged misrepresentation and issuance of the permit, the trial court, relying on the testimony of the township's zoning officer, made findings contrary to the owners' allegations. The court found:

> The Zoning Officer also informed Defendants' counsel that Defendants did not have a valid non-conforming use, he referred them to the proper section of the Zoning Ordinance, and told them to take this matter up with the Zoning

---

[15] The Bevans conducted a different use than the previous owner. Thus the time that the township could have acquiesced in the present illegal use was only two years and, therefore, is insufficient to apply a laches theory. *See, e.g. Dewald v. Board of Adjustment of Pittsburgh,* 13 Pa. Commonwealth Ct. 303, 320 A.2d 922 (1974) (a township's three to six-year delay did not constitute an unreasonable delay to apply laches theory).

Hearing Board or the Board of Supervisors. The Zoning Officer did not respond to further request by counsel to register the property as a non-conforming use.

Defendants were issued a building permit at the request of Defendants' general contractor in July, 1980, to construct a garage. The Building Officer issued this permit on the representation by Defendants [sic] employee that the garage was to be used for storage of agricultural and residential equipment.

A municipal permit issued upon a misrepresentation, thereby evidencing bad faith, does not confer a vested right. *See Department of Environmental Resources v. Flynn,* 21 Pa. Commonwealth Ct. 264, 344 A.2d 720 (1975), cited with approval in *Petrosky v. Zoning Hearing Board of Upper Chichester Township,* 485 Pa. 501, 402 A.2d 1385 (1979). Nor was the township guilty of laches where it acted in due diligence in indicating to the Bevans that their operation was illegal, and, subsequently, in initiating this action. *See Taylor v. Township of Wilkens,* 60 Pa. Commonwealth Ct. 65, 430 A.2d 1014 (1981).

Accordingly, we affirm the decision of the common pleas court.[16]

## ORDER

Now, February 22, 1983, the order of the Court of Common Pleas of Bucks County dated February 9, 1982, No. 80-0350-11-5, is hereby affirmed.

---

[16] The final contention that the zoning officer did not comply with section 613 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §10613, and section 600 of the township's zoning ordinance which require registration of nonconforming uses because the township ignored the Bevans' request to register their nonconforming use indicates that the township has "come to equity court with unclean hands." However, the township's reluctance to register the property merely reflects the disagreement leading to this litigation, and therefore is without merit.