Joseph **PIETROPAOLO,** Sr. and Rosa F. and Joseph Pietropaolo, Jr. and Landscape Contractor, Inc., Appellants

v.

The ZONING HEARING BOARD OF LOWER MERION TOWNSHIP.

Commonwealth Court of Pennsylvania.

Argued June 11, 2009.

Decided Aug. 19, 2009.

Mark S. Pearlstein, Wayne, for appellants.

Sean P. Flynn, Bridgeport, for appellee.

BEFORE: SIMPSON, Judge,
LEAVITT, Judge, and FLAHERTY,
Senior Judge.

OPINION BY Judge SIMPSON.

In this appeal, Joseph Pietropaolo, Sr., Rosa F. Pietropaolo and Joseph Pietropaolo, Jr., Landscaping Contractor, Inc. (collectively, Applicants), ask whether the Zoning Hearing Board of Lower Merion Township (ZHB) erred in denying their appeal from an enforcement notice that required Applicants to cease using their residentially-zoned property for a landscape contractor business. Applicants argue the ZHB erred in denying their appeal where the use of a garage on the property and the operation of the landscaping business are a continuation of a lawful nonconforming use. Alternatively, they assert the ZHB erred in denying their variance by estoppel request where the Township acquiesced to their use and where the ZHB granted such relief to a similarly situated landowner. Discerning no error in the ZHB's decision, we affirm.

Joseph Pietropaolo, Sr. and his wife Rosa own the property located at 355 East County Line Road in Ardmore, Lower Merion Township (subject property). The subject property is zoned R–6A Residential and is improved with a single family dwelling, a detached four-bay garage and a paved driveway. The Pietropaolo's son, Joseph Pietropaolo, Jr., lives in a dwelling on the subject property with his wife. Pietropaolo, Jr. also uses the garage and paved driveway in connection with a landscaping business. It is that use, the extent of which is described more fully below, which is at issue here.

This matter originated by virtue of a letter dated September 14, 2007, from the Township Zoning Officer to Applicants, which indicated the use of the subject property for a landscaping business was not permitted in the R–6A district. The zoning officer sent the letter in response to a complaint by Applicants' neighbor, Anna Sachs (Objector).[1]

---

1. Applicants note that Objector's complaint about their landscaping business occurred shortly after Objector received complaints from neighbors, including Pietropaolo, Jr., about several birdfeeders installed on Objector's property. Reproduced Record (R.R.) at 173a–74a; 185a.

In October 2007, Applicants appealed the zoning officer's determination to the ZHB, claiming the activities relating to the landscaping business were entitled to continue as a nonconforming use. Alternatively, Applicants asserted they were entitled to a variance by estoppel because they openly conducted the landscaping business on the subject property for 38 years without Township interference. A hearing on Applicants' appeal ensued before the ZHB.

After hearing, the ZHB denied Applicants' appeal and their request for a variance by estoppel. In its opinion, the ZHB made the following findings.

Joseph Pietropaolo, Jr. testified he currently operates a residential landscape contracting business from the subject property for homes in the Eastern Main Line area. The landscaping operation lasts from mid-March to mid-December. During the winter, Pietropaolo, Jr. operates a smaller-scale snow-plowing operation.

The work day for Pietropaolo Jr.'s business begins and ends at the subject property, where the vehicles and equipment are stored and where the employees meet and prepare the equipment for the day's work.

The equipment used for the business includes Pietropaolo Jr.'s pickup truck, his father's truck, a dump truck, a trailer, hand-operated leaf blowers, push blowers, three walk-behind mowers, a rider mower, a leaf loader and a variety of hand tools and supplies. Including the Pietropaolos, the business is comprised of four full-time employees. During the spring and fall seasons, up to three additional employees may be added.

A typical workday on the subject property begins when Pietropaolo Sr. arrives in his truck at 6:30 a.m. to prepare the equipment for the day's work. He opens the garage, retrieves the gas cans and leaves the subject property to fill them at a local gas station. The other employees arrive around 7:00 a.m. They connect the trailer to the pickup truck and load the riding mowers, push mowers and other equipment and tools required for the day's work. They depart the subject property at approximately 7:30 a.m. The employees return to the subject property at approximately 3:30 p.m., unload the trailer and store the equipment, including the dump truck, inside the garage bays. Pietropaolo, Jr. testified the loading of the mowers does not necessarily occur everyday. Depending on the weather, the mowers may remain "pre-loaded" on the trailer for several consecutive days. Reproduced Record (R.R.) at 79a. On bad weather days, the mowers may have to be unloaded and loaded from the trailer as they cannot remain outside.

The Pietropaolos perform maintenance and minor equipment servicing inside the garage. This includes lubricating and changing the oil in the machines, and sharpening and grinding the blades for the mowers, usually on the weekends.[2]

Pietropaolo, Sr. testified Applicants' operation has been conducted in the same basic manner and intensity since 1969, when he first purchased the subject property.

Arcolino Bianco testified on behalf of Applicants with regard to the use of the subject property prior to its purchase by Pietropaolo, Sr. Bianco was born in 1923 and lived in the neighborhood of the sub-

---

2. The snowplowing operation involves just the two Pietropaolos. They attach plows, which are stored outside, to their pickup trucks and leave the subject property for their assigned destinations. This may occur at any hour, depending on the time and severity of the storm.

ject property until 1950 (with the exception of a three-year stint in the armed services). After 1950, Bianco moved to Havertown, but his family continued to live in a house in the immediate neighborhood of the subject property. Bianco has been a frequent visitor to that neighborhood since 1950. He testified the garage has been on the subject property since at least 1930, when it was the only structure on the site. The owners of the subject property at that time, the Finocchios, rented out the garage to two truckers and an individual with a car. One of the Finocchios also stored his car there. After Thomas Finocchio built a house on the subject property in 1948, the garage continued to be used for the storage of two trucks and two automobiles. The automobiles were owned by the Finocchios. According to Bianco, it was not until the Pietropaolos purchased the subject property that a landscaping business began to operate from the property.

Objector testified in opposition to Applicant's appeal. Since August 2001, Objector resided at the property adjacent to the subject property. Objector testified that when she first moved in, she spoke to Pietropaolo, Jr. about the landscaping business conducted on the subject property. According to Objector, Pietropaolo, Jr. stated the business had been there a long time and was grandfathered in by the Township. Objector did not question Pietropaolo, Jr.'s statement until recent disputes between the neighbors prompted her to ask the zoning officer to investigate.

Objector presented 22 photographs and testified regarding the impact of the landscaping business on the enjoyment of her property. She stated the pickup trucks come in and out of the subject property several times each day early in the morning. The dump truck is often parked outside the garage, and the business has spilled over to the garage on the property

at 357 East County Line Road, which is also owned by Pietropaolo, Sr. The mowers must be started to move them onto the trailer, a very noisy operation according to Objector. Objector also testified the five employees (sometimes more) commonly engage in loud conversations and shouting in the morning. On the weekends, Pietropaolo, Sr. sharpens the mower blades on a grinding stone for several hours, also a loud operation.

As to the issues presented in Applicants' appeal, the ZHB rejected Applicants' primary contention that the landscaping business constitutes the continuation of a lawful nonconforming use.

Specifically, based on the evidence presented, the ZHB determined the landscaping business constituted a "non-permitted change in use." ZHB Op. at 5, R.R. at 298a. The ZHB stated when the garage on the subject property began to be used for the storage of two trucks and two cars sometime before 1930, the subject property was zoned for business use, which permitted a "private or minor garage." *Id.* The ZHB noted "minor garage" was then defined as "a building, not a Private Garage, one story in height, used for the storage of automobiles and not used for making repairs thereto." *Id.* The ZHB stated in 1939, the subject property was rezoned to its current R–6A classification; as a result, the use of the subject property for a minor garage became nonconforming at that time.

The ZHB further stated, like most zoning ordinances, the Lower Merion Township Zoning Ordinance (zoning ordinance) protects only the use that existed on the date the use became nonconforming. Here, the ZHB determined, the protected, lawful nonconforming use in 1939 was the storage of two trucks and two automobiles (one of which was owned by the former owners of the subject property). The

ZHB noted Bianco's testimony that the garage was used only for that purpose until 1950. In that year, having built a house on the site two years earlier, the owner of the subject property took over a second garage bay for his own personal use—a permitted use under the zoning ordinance. Thus, the ZHB determined, from 1950 until Pietropaolo Sr. purchased the subject property in 1969, the only lawful nonconforming use was the storage of two trucks in the garage. The ZHB stated there was no evidence that any other type of business activity was conducted on the subject property by the truck owners, such as loading equipment, gathering employees, storing tools or servicing equipment.

The ZHB determined the landscaping business does not constitute the continuation of a prior nonconforming use, but is a prohibited change in use. Specifically, the ZHB found Applicant's use is qualitatively different from the prior use of two garage bays for vehicle storage. The ZHB set forth several distinguishing facts, described more fully below, in support of this determination. Moreover, the ZHB stated, Objector's photographic evidence proved the landscaping business expanded to the adjacent property at 357 East County Line Road. The ZHB stated, although this property is also owned by Pietropaolo, Sr., Applicants did not obtain a required special exception to expand onto that property. As such, the ZHB determined this expanded use was clearly prohibited.

As to Applicants' alternative variance by estoppel claim, the ZHB determined Applicants did not prove all the elements required to obtain such relief by clear, precise and unequivocal evidence. In short, the ZHB determined Applicants did not prove that: the Township actively acquiesced to their business use of the subject property; that Applicants innocently relied on the validity of the use; that

Applicants made substantial expenditures in reliance on their belief that the business use would be permitted by the Township; or, the denial of the variance would cause unnecessary hardship. Applicants' appealed the ZHB's order to the Court of Common Pleas of Montgomery County (trial court).

Without taking additional evidence, the trial court affirmed. As to whether Applicants' business constitutes the continuation of a nonconforming use, the trial court stated the ZHB properly determined the current landscaping business constituted a change in use from the nonconforming "minor garage" use. The trial court stated the evidence established Applicants are using the subject property as the center of an active business operation rather than passively storing vehicles as the prior owners did. The trial court stated, prior to Applicants' purchase of the subject property, trucks were stored in the garage, but that was the full extent of any commercial use. Currently, however, Applicants are using the garage as a storage area for contracting equipment, as a staging area for employees to gather daily to load and unload vehicles and equipment, and as a workspace to service and maintain landscaping equipment. The trial court agreed with the ZHB that these additional activities constitute a change in use rather than a continuation of an existing use. Thus, the trial court concluded the ZHB properly determined that Applicants' landscaping business was not the continuation of a lawful nonconforming use.

As to Applicants' variance by estoppel claim, the trial court stated the ZHB properly determined Applicants did not meet their burden to satisfy any of the elements necessary to obtain such relief. For these reasons, the trial court affirmed the ZHB's order. Applicants now appeal to this Court.

Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. *Good v. Zoning Hearing Bd. of Heidelberg Twp.*, 967 A.2d 421 (Pa.Cmwlth.), *appeal denied*, —— Pa. ——, 973 A.2d 1008 (2009).

On appeal, Applicants argue the ZHB erred in denying their appeal where the evidence showed the use of the garage on the subject property and the operation of the landscaping business represent the continuation of a lawful nonconforming use. Alternatively, they assert the ZHB erred in denying their request for a variance by estoppel where the Township acquiesced in their use and where the ZHB granted a variance by estoppel request from a similarly situated landowner.

■ At the outset, we note, this Court may not substitute its interpretation of the evidence for that of the ZHB. *Taliaferro v. Darby Twp. Zoning Hearing Bd.*, 873 A.2d 807 (Pa.Cmwlth.), *appeal denied*, 585 Pa. 692, 887 A.2d 1243 (2005). It is the function of a ZHB to weigh the evidence before it. *Id.* The ZHB is the sole judge of the credibility of witnesses and the weight afforded their testimony. *Id.* Assuming the record contains substantial evidence, we are bound by the ZHB's findings that result from resolutions of credibility and conflicting testimony. *Id.*

■ Additionally, a ZHB is the entity responsible for the interpretation and application of its zoning ordinance, and its interpretation of its own ordinance is entitled to great deference from a reviewing court. *Smith v. Zoning Hearing Bd. of Huntingdon Borough*, 734 A.2d 55 (Pa. Cmwlth.1999). The basis for the judicial deference is the knowledge and expertise a ZHB possesses to interpret the ordinance it is charged with administering. *Id.*

## I. Continuation of Non–Conforming Use

■ Applicants first argue they are entitled to continue their landscaping business activities because the subject property has been continuously used for commercial purposes, namely, the storage of commercial equipment, since the 1930's when a "storage house" was a permitted use under the applicable zoning ordinance. Applicants assert their use of the subject property for the storage of landscaping equipment continues the "storage house" use that started around 1930 and became a nonconforming use in 1939 upon the enactment of the zoning ordinance. We disagree.

■ A lawful, nonconforming use of a property is a use predating a subsequent prohibitory zoning restriction. *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204 (Pa.Cmwlth.2009). The right to maintain a nonconforming use is only available for uses that were lawful when they came into existence and which existed when the ordinance took effect. *Id.* It is the burden of the party proposing the existence of such a use to establish both its existence and legality before the enactment of the ordinance at issue. *Id.* "This burden includes the requirement of *conclusive proof by way of objective evidence* of the precise extent, nature, time of creation and *continuation of the alleged nonconforming use.*" *Jones v. Twp. of N. Huntingdon Zoning Hearing Bd.*, 78 Pa. Cmwlth. 505, 467 A.2d 1206, 1207 (1983) (emphasis added).

■ "*The manner of use* and the dates of its existence *are questions of fact on which a reviewing court defers to the factfinder;* however, the legality of a use is a question of law over which our review is plenary." *Hafner*, 974 A.2d at 1211 (emphasis added).

As to the limitations on the protections afforded nonconforming uses, in *Hanna v. Board of Adjustment of Borough of Forest Hills*, 408 Pa. 306, 183 A.2d 539 (1962), our Supreme Court stated:

The use of property which the ordinance protects, or freezes, is the use which was in existence at the time of the passage of the ordinance or the change of a use district but it offers no protection to a use *different* from the use in existence when the ordinance was passed. The latter does not render the ordinance invalid. The nonconforming use which is within the orbit of protection of the law and the Constitution is the nonconforming use which exists at the time of the passage of the zoning ordinance or the change in a use district under a zoning ordinance, not a *new* or *different* nonconforming use....

*Id.* at 313–14, 183 A.2d at 543–44 (citations omitted) (emphasis in original).

■ However, this rule is subject to the doctrine of natural expansion, which gives a landowner the right to expand "as required to maintain economic viability or to take advantage of increases in trade" so long as the expansion is not detrimental to the public welfare, safety and health. *Smalley v. Zoning Bd. of Middletown Twp.*, 575 Pa. 85, 99, 834 A.2d 535, 543 (2003) (citations omitted).

■ As Applicants correctly note, the doctrine of natural expansion does not require a proposed use be identical to the nonconforming use. Rather, the proposed use must be sufficiently similar so as not to constitute a new or different use. *Limley v. Zoning Hearing Bd. of Port Vue Borough*, 533 Pa. 340, 625 A.2d 54 (1993) (proposed public restaurant and bar similar to existing use as private social club); *Pappas v. Zoning Bd. of Adjustment of City of Phila.*, 527 Pa. 149, 589 A.2d 675 (1991) (pizza restaurant with seating for 40

customers similar to existing use as sandwich shop with limited customer seating that sold primarily take-out food); *U. Providence Twp. Appeal*, 414 Pa. 46, 198 A.2d 522 (1964) (proposed day camp and swim club similar to existing use as amusement park); *Mutimer Co. v. Wagner*, 376 Pa. 575, 103 A.2d 417 (1954) (proposed machinery sales office similar to existing use as real estate sales office).

■ A nonconforming use cannot be limited to the precise magnitude which it existed on the date when the zoning ordinance was adopted. *Limley.* However, there is no constitutionally protected right to change a nonconforming use to another use not allowed by the zoning ordinance, nor may an additional nonconforming use be appended to an existing nonconformity. *Hager v. W. Rockhill Twp. Zoning Hearing Bd.*, 795 A.2d 1104 (Pa.Cmwlth.2002).

Here, the ZHB determined Applicants did not prove their landscaping business constituted the continuation or reasonable expansion of the lawful, nonconforming use for the passive storage of vehicles; rather, the ZHB found the activities conducted on the subject property constituted an impermissible change in use to an active business operation.

Specifically, the ZHB found when the garage on the subject property began to be used for the storage of two trucks and two cars sometime before 1930, the subject property was zoned for business use, which permitted, among other things, a "minor garage" ("a building, not a Private Garage, one story in height, *used for the storage* of automobiles *and not used for making repairs* thereto.") *See* ZHB Op. at 5; R.R. at 298a (emphasis added). The ZHB further found in 1939, the subject property was rezoned R–6A Residential, and, as a result, the use of the subject property for a minor garage became non-

conforming at that time. *Id.* The ZHB noted, like most zoning ordinances, the Township's zoning ordinance protects only the use that existed on the date the use became nonconforming. *See* Zoning Code § 155–99 A.

Based on the evidence presented, the ZHB determined the lawful nonconforming use of the subject property in 1939 consisted of the storage of two trucks and two automobiles. The ZHB stated there was no evidence that any other business activity was conducted by the truck owners such as loading equipment, gathering employees, storing tools or servicing equipment. As a result, the ZHB determined the landscaping business did not constitute the continuation of a nonconforming use, but rather, represented a prohibited change in use. Notably, the ZHB stated:

> Here, the [ZHB] finds that [Applicants'] use is qualitatively different from the prior use of two garage bays for vehicle storage. . . .
>
> The differences between the prior use and the present landscaping business are manifest. While the trucks stored on the [subject] [p]roperty prior to 1969 might have been *owned* by a construction company, there is no evidence that any other construction equipment was stored there, that any staging or loading of material or equipment was done on the [subject] [p]roperty by employees of the company, or that *any* business activity connected to the construction company was conducted there. [Applicants], on the other hand, use the garage and driveway: (1) for a staging area for employees to gather daily and to periodically load motorized equipment onto multiple vehicles, (2) for a workspace to service and maintain landscaping equipment, and (3) for the outside storage of equipment. The addition of these kinds of activities constitutes a change in use, rather than a permitted continuation or reasonable expansion of the prior nonconforming use.

ZHB Op. at 7; R.R. at 299a–300a (citations omitted).

In light of the ZHB's findings regarding these significant, qualitative differences, and recognizing the burden is on the landowner to establish the existence and continuation of a prior nonconforming use, *Hafner; Jones,* we cannot conclude the ZHB abused its discretion in determining Applicants' business use is different, and, thus, not a continuation of the prior, nonconforming storage use.

This determination is confirmed by reference to case law. In *Watson v. Zoning Hearing Board of West Hanover Township,* 90 Pa.Cmwlth. 646, 496 A.2d 878 (1985), this Court, speaking through Judge Craig, counseled that when seeking to decide whether an application involves a new use or an extension of an existing one, the Court must look to the applicable zoning ordinance's structure as the chief guide with respect to how uses are categorized for the particular municipality. The Court therefore looked at how a contracting use was defined in the current ordinance to determine how local lawmakers intended to limit that use.

Following that approach here, we previously acknowledged that a "minor garage" was originally defined as a building for storing automobiles and not used for making repairs. Similarly, the current zoning ordinance defines a "Storage Garage" as "A *building,* not a public or private garage, *used solely for the storage* of motor vehicles (not trucks) but *not for the sale, service, or repair of motor vehicles.*" Zoning Code § 155–4, GARAGE(3) (emphasis added).

Under these definitions, storage is permitted inside the structure, not outside, and no inside activities beyond storage are

included. Given these definitions, we agree that a use involving significant and at times daily activity outside the garage is a use different than a "minor garage" or "storage garage." No error is evident in the ZHB's determination.

Our conclusion is also consistent with this Court's decision in *Bevans v. Township of Hilltown*, 72 Pa.Cmwlth. 227, 457 A.2d 977 (1983). Speaking for the Court, Judge Craig evaluated the change from the nonconforming parking of two pick-up trucks and a flatbed truck to a use involving outside parking of more trucks, repair of trucks, daily assembly of workers, warmup of trucks at the beginning of the day and returning of the trucks at the end of the day. The fact-finder's determination that use of property was a different use was upheld. *Bevans* is dispositive here.

While Applicants may naturally expand the inside storage to include more vehicles, and perhaps different types of vehicles and items that attach to vehicles, their activities would need to be similar to a vehicle storage use. Natural expansion would be limited to the structure in the absence of broader municipal approval.

Also, Applicants are entitled to pursue a use similar to a "storage garage" or "minor garage." *Limley*. A "public garage" may be such a similar use which could permit other activities inside the structure.[3] However, as to activities outside the structure, Applicants must prove they are accessory to the motor vehicle storage use inside. Further, a "Parking Facility" or a "Parking Structure" could be a similar use, but neither of these uses is defined to include any activity beyond parking.[4] In short, a review of the Zoning Code fails to reveal any use similar to a "storage garage" which would allow all the activities in all the locations which Applicants currently pursue.

Of further note, the ZHB found Objector's photographic evidence proved the landscaping business expanded onto the adjacent property owned by Pietropaolo, Sr. The ZHB stated that although Pietropaolo, Sr. owns that property, such expansion requires an applicant to apply for and obtain a special exception, and Applicants failed to do so here. *See* Zoning Code § 155–99(B). Applicants do not dispute this determination.[5]

**3.** A "Public Garage" is defined as "A building, not a private or storage garage, used solely for the storage, sale, service or repair of motor vehicles." Zoning Code § 155–4, GARAGE (2). Section 155–87.21(B)(19) of the Zoning Code addresses uses accessory to non-residential/commercial uses.

**4.** Zoning Code § 155–4 defines "Parking Facility" as "A facility providing either off-street parking and/or parking in a structure." "Parking Structure" is defined as "A parking garage located above ground and/or underground consisting of one or more levels; not surface parking." *But see* Zoning Code § 155–87.21(B)(8) (nonresidential/commercial uses include commercial parking facility that is pedestrian oriented in both design and scale).

**5.** Moreover, contrary to Applicants' argument that the nonconforming use of the subject property for vehicle storage fell within the prior zoning ordinance's undefined "storage house" classification, the ZHB determined the appropriate classification was a "minor garage." Our review of the Township's first zoning ordinance reveals a "storage house" was a permitted use when the subject property was zoned for business use prior to 1939. More particularly, the ordinance enumerated 19 permitted uses in a business district, including: "11. Storage house; stable, express, carting or hauling office or station; ice manufacturing; yard for storage and sale of coal or building materials." R.R. at 212a. Given our deferential review of the ZHB's interpretation of its zoning ordinance, *see* *Smith v. Zoning Hearing Board of Huntingdon Borough*, 734 A.2d 55 (Pa.Cmwlth.1999), and the facts presented here, no error is apparent in the ZHB's determination that the prior use was more aptly categorized as a "minor ga-

## II. Variance by Estoppel

Alternatively, Applicants assert they are entitled to a variance by estoppel based on the fact they have used the subject property for their landscaping business activities for 38 years without Township interference. Further, Applicants maintain they are entitled to the benefit of a nearly identical case decided by the ZHB in which the ZHB granted a variance by estoppel to a similarly-situated landowner. *See In re Appeal of Richard Kaller* Appeal No. 3163 (1991); *See* Ex. A–9; R.R. at 204a.

■ There are five factors relevant to whether a ZHB should grant a variance by estoppel.

> Such variances are appropriate when a use does not conform to the zoning ordinance and the property owner establishes all of the following: (1) a long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use; (2) the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceeding; (3) the landowner has made substantial expenditures in reliance upon his belief that his use was permitted; and (4) denial of the variance would impose an unnecessary hardship on the applicant.

*Borough of Dormont v. Zoning Hearing Bd. of Borough of Dormont,* 850 A.2d 826, 828 (Pa.Cmwlth.2004) (citations omitted). For Applicants to prevail under a variance by estoppel theory, they must prove the essential factors by clear, precise and unequivocal evidence. *Springfield Twp. v. Kim,* 792 A.2d 717 (Pa.Cmwlth.2002).

Here, the ZHB determined Applicants did not satisfy *any* of the required factors. Upon review, no error is apparent in the ZHB's rejection of Applicants' variance by estoppel claim.

■ Perhaps the most glaring deficiency in Applicants' variance by estoppel claim is their failure to prove denial of the variance would result in unnecessary hardship. In order to establish unnecessary hardship, an applicant must show more than a mere economic or personal hardship. *Dormont.* To accomplish this, "[t]he applicant must prove that the hardship is unique to the property, and that *the zoning restriction sought to be overcome renders the property practically valueless." Id.* at 828 (emphasis added).

Here, Applicants did not prove the requisite hardship. More particularly, although denial of the variance may result in some economic loss, as the ZHB noted, Pietropaolo, Jr. and his wife reside on the subject property, and the garage on the subject property can be used for storage. Clearly, denial of the variance would not render the subject property valueless. Thus, the ZHB did not err in determining denial of Applicants' variance by estoppel request would not cause unnecessary hardship.

In addition to Applicants' failure to prove unnecessary hardship, the ZHB determined Applicants did not show the Township actively acquiesced to their business use. More particularly, the ZHB stated:

> [T]here was no ... evidence that the Township actively acquiesced in the [Applicants'] business use of the [subject] [p]roperty. [Applicants] testified to receiving a letter about the business from

rage" rather than a "storage house" (which, given its context, would seem to indicate

more of a warehouse-type use).

an unidentified zoning official and to an earlier conversation about storing equipment with an unidentified Township employee, but they could not produce any letter or identify the employee or his position. [N.T. 38–39, 70–71] Although the [ZHB] allowed this hearsay testimony, it does not rise to the level of clear, precise and unequivocal evidence required to support an estoppel against the Township. Moreover, the Township's mere failure to issue a citation for many years does not constitute active acquiescence. There must have been an affirmative act, such as issuing a permit, for this element to be satisfied. *Skarvelis v. Zoning Hearing Board of Borough of Dormont*, 679 A.2d 278 (Pa. Cmwlth.1996).

ZHB Op. at 8–9; R.R. at 301a–02a (footnote omitted). The record supports the ZHB's determination. R.R. at 61a–62a; 93a–94a.

Moreover, the ZHB correctly set forth the law with regard to the active acquiescence required by a municipality in order for an applicant to prevail on a variance by estoppel claim. Indeed, in cases where this Court granted a variance by estoppel, the municipalities did not passively stand by. Rather, they committed an affirmative act, for example, granting a building permit or reasonably leading a landowner to conclude his use was lawful. *See, e.g., Knake v. Zoning Hearing Bd. of Dormont*, 74 Pa.Cmwlth. 265, 459 A.2d 1331 (1983) (variance by estoppel granted where borough failed to act for 44 years, knew the use was impermissible for 27 years, *and issued a building permit for the impermissible use)*; *Three Rivers Youth v. Zoning Bd. of Adjustment of City of Pittsburgh*, 63 Pa.Cmwlth. 184, 437 A.2d 1064 (1981) (inaction by municipality for seven years *plus issuance of building permit by municipality* and reliance by landowner on zoning officer's interpretation of regula-

tion); *Twp. of Haverford v. Spica*, 16 Pa. Cmwlth. 326, 328 A.2d 878 (1974) (inaction by municipality for 36 years *and issuance of building permit where municipality knew of intended construction* ). Thus, Applicants arguments on this point fail.

▪ Further, the ZHB determined Applicants did not prove innocent reliance on the validity of their use. Again, we agree. In *Kim*, we explained:

> One who undertakes to make use of real estate for commercial purposes without inquiring as to whether the use is permitted by the municipality's zoning ordinance, does so at his own peril. The purchaser's duty to inquire is not limited to whether a particular *use* is permitted but, by implication, must also encompass an inquiry into the limitations placed on the manner in which the property may be used, *e.g.,* a recreational vehicle park was a permitted use but not for permanent residences.

*Id.* at 722 (citation omitted) (emphasis in original).

Here, the ZHB found, although Pietropaolo, Sr. claimed to have spoken to someone in the Township about the use of the subject property, he could not identify the person or state what his position was. ZHB Op. at 9, R.R. at 302a. The ZHB further found Pietropaolo, Sr. did not he testify that he informed this individual that staging, maintenance, and preparation for a landscape business would be conducted on the subject property. *Id.* Pietropaolo, Sr. merely stated he was a landscape contractor and asked whether he could "keep his equipment" on the subject property. *Id.;* R.R. at 94a. The Township employee allegedly said "yes." *Id.* The ZHB determined this testimony was insufficient to constitute clear, precise and unequivocal evidence of innocent reliance on the validity of the use for the subject property for a

landscape business. No error is apparent in the ZHB's determination. *Kim.*

In short, Applicants did not prove at least three of the essential factors necessary to obtain a variance by estoppel by clear, precise and unequivocal evidence. Thus, no error is apparent in the ZHB's denial of Applicants' variance by estoppel request.

 Furthermore, as for Applicants' reliance on the ZHB's prior decision in *Kaller,* in which the ZHB granted an applicant a variance by estoppel, as the Township notes, the ZHB's decision to grant a variance in an earlier case does not mandate approval of Applicants' request here. Indeed, in *Appeal of deBotton,* 81 Pa.Cmwlth. 513, 474 A.2d 706, 711 (1984), this Court explained:

> [T]he fact that earlier variances were granted in the [applicable zoning] district does not necessarily dictate the approval of another application, for variances are granted on a case-by-case basis and then only when the applicant proves that the ordinance imposes upon him a unique hardship and that the approval of the variance will not have an adverse impact on the health, safety and welfare of the general public.

*See also Swemley v. Zoning Hearing Bd. of Windsor Twp.,* 698 A.2d 160, 163 (Pa. Cmwlth.1997) ("Just because a board has granted a variance to one property-owner, it need not grant a variance to another similarly situated property-owner.")

Perhaps more importantly, a review of the ZHB's prior decision in *Kaller,* reveals that the case is factually distinguishable from Applicants' case. *See* R.R. at 240a– 44a. Indeed, in *Kaller,* the Township actively acquiesced to the applicant's business use by, among other things, issuing a permit for construction of a garage on an adjacent property owned by the applicant, which housed offices for the applicant's business. R.R. at 240a. The ZHB made no such finding here. Also, in *Kaller,* the ZHB specifically determined that denial of the variance would create unnecessary hardship. As explained above, the ZHB made a contrary finding here. Therefore, we reject Applicants' assertions on this point.

For the foregoing reasons, we affirm.

### ORDER

AND NOW, this 19th day of August, 2009, the order of the Court of Common Pleas of Montgomery County is **AFFIRMED.**