# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Prestige of Reading, PA, Inc. | : |
| | : No. 603 C.D. 2015 |
| v. | : |
| | : Argued: December 7, 2015 |
| Zoning Hearing Board of the | : |
| Township of Brecknock, | : |
| Berks County, Pennsylvania, | : |
| and Township of Brecknock, | : |
| Berks County, Pennsylvania | : |
| | : |
| Appeal of: Township of Brecknock | : |

BEFORE:   HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
                  HONORABLE PATRICIA A. McCULLOUGH, Judge
                  HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

## _OPINION NOT REPORTED_

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                                   FILED: January 27, 2016

The Township of Brecknock (Township) appeals from the March 18, 2015 order of the Court of Common Pleas of Berks County (trial court), which reversed the decision of the Zoning Hearing Board of Brecknock Township (Board) to deny the variance application of Prestige of Reading, PA, Inc. (Prestige) to change the permitted use of property in a rural residential neighborhood to allow for a commercial use.

## Facts and Procedural History

Prestige, a landscaping business, owns property situated at 651 Maple Grove Road, Mohnton, Pennsylvania (Property) in the Township's rural residential zoning district. On August 6, 2014, Prestige submitted an application for a variance from section 27-201(2) of the Township's zoning ordinance (Ordinance) seeking to change the principal use of the property from a single family residential use to a commercial use for the purpose of storing landscaping equipment and to allow for a rental residence. (Reproduced Record (R.R.) at 142a-45a.)

On September 4, 2014, the Board held a hearing on Prestige's variance application. At the hearing, the Board entered into the record various exhibits, including a notice of public hearing; affidavits of posting of the notice of public hearing; a letter that was distributed to interested parties; a copy of Prestige's zoning application; proof of publication of the notice of public hearing; and a letter from the Township solicitor's office advising that they would be participating in the hearing and opposing Prestige's variance application. The Board also granted four local residents interested party status, allowing them to question witnesses and provide statements. (R.R. at 36a-38a.)

Prestige's owner, Pasquale V. Fonte (Fonte), testified that the Property is approximately a two-acre wooded lot that contains a single home, a 20' x 40' pole barn building, and a "couple other sheds and small barns." (R.R. at 42a.) Fonte stated that Prestige purchased the Property approximately one year before filing the variance application and, prior to the purchase, had rented the Property from the previous owner. He testified that the Property was previously used as a farm and, when Prestige began occupying the Property, it was overgrown and in "fair to poor" condition. (R.R. at 43a.) Fonte stated that after Prestige purchased the Property, he

cleared much of the overgrowth, improved the landscaping, and constructed an additional pole barn building. (R.R. at 42a-45a.)

Fonte testified that Prestige proposed to use the Property to store and perform work on Prestige's vehicles and equipment, but he testified that he does not operate Prestige out of the Property.[1] He said that the equipment has been present on the Property for approximately two years. Fonte stated that Prestige's vehicles have Prestige's logo on them and that it would be obvious to anyone who passed the Property during the last two years that landscaping equipment was being stored there. (R.R. at 45a-46a.)

Fonte further testified that Prestige obtained a building permit from the Township and began construction of a pole barn in June of 2014.[2] Fonte said that he had discussions with a Township representative regarding his proposed use of the pole barn before the permit was issued. Specifically, Fonte stated that he "met with the [Township] Inspector and told him what I was doing, and I went from there." (R.R. at 47a.) Fonte noted that the Township Inspector was on the Property on multiple occasions and that the landscaping equipment was visible during his visits. Consequently, Fonte believed that a Township representative was aware that he planned to use the pole barn to store landscaping equipment prior to the building's construction. (R.R. at 46a-47a.)

Fonte stated that he first became aware that the Township had concerns with his use of the Property when he received a notice to cease and desist after the pole building was constructed. Pursuant to the notice, the Township advised Fonte

_____

[1] Fonte testified that Prestige is located at 412 South 5th Street, Reading, Pennsylvania, 19602. (R.R. at 45a.)

[2] Fonte testified that the pole barn is approximately 45' x 80'. (R.R. at 83a.)

3

that the use of the Property for a landscaping business violated the Ordinance. However, Fonte testified that his use of the Property is consistent with the character of the neighborhood because there are other pole buildings and barns in the neighborhood and that some of those structures are used for commercial purposes. Fonte acknowledged that he does not have any knowledge regarding the zoning status of the other properties in the neighborhood being used for commercial purposes. Fonte noted that no neighbors have complained about his use of the Property and that he intends to store all of the equipment inside the pole barn and continue to improve the Property's appearance. (R.R. at 47a-50a, 191a-92a.)

On cross-examination, Fonte testified that his business includes snowplowing and that he is on call twenty-four hours a day. Fonte further testified that the repair work that would be performed on the Property includes changing and sharpening blades, changing brakes and tires, and washing equipment. Fonte also stated that he would keep tools on the Property for the repair work, such as air tools. Fonte noted that the air tools generate a sound and that he sometimes uses ear protection when operating the air tools. However, he subsequently testified that the noise generated from his repair activities would be no different than a homeowner who is performing work on a car in his garage, or a farmer working on a tractor. Fonte said that he planned to store his mowers, salt spreaders, plows, and skid loader in the pole barn, but he would not store his vehicles in the structure. He noted that Prestige currently has six employees, but only two employees come to the Property to pick up equipment using Prestige trailers and vehicles. Accordingly, there are instances when employee vehicles are parked at the Property. (R.R. at 51a-60a.)

In response to questioning by interested parties, Fonte stated that two large dump trucks would be stored outside the building. He also confirmed that he

4

would store fuel for his equipment on the Property in five-gallon tanks. Fonte testified that there is currently an empty gas tank, an inoperable boat, and recyclables on the Property, but that those items will be cleaned up. Fonte acknowledged that chemicals will be stored in the pole barn but said that the only burning he performs on the Property is the burning of trees that he removes from the Property. (R.R. at 61a-62a, 75a-76a, 93a.)

Fonte further stated that he is content with the size of the business and does not want to expand. Fonte testified that he plans to rehabilitate the residence for rental purposes and that he believed his use was consistent with the Property's current zoning status. Fonte recognized that the building permit application contained a section where the building's proposed use could be identified and that there was an option to propose a commercial use; however that section was blank and Fonte could not provide a reason why. Similarly, Fonte would not comment on the proposed use stated in another section of the application. (R.R. at 59a, 61a, 70a, 73a, 77a, 86a-89a.)

Fonte's wife, Kelly Fonte, testified that she spoke to the Township's zoning officer before the pole barn was built and that the zoning officer knew of the Property's proposed use prior to its construction. Mrs. Fonte also offered into the record a statement from a neighbor that he approves of the proposed use at the Property. (R.R. at 91a-92a.)

Jeffery Fiant (Fiant) testified that he has served on the Township's Board of Supervisors since 2000. He stated that he routinely reviews applications to the Board and reviewed Prestige's application for a variance. Fiant testified that the Board of Supervisors agreed to oppose Prestige's application, explaining that, if the variance was granted, it would change the character of and be incompatible with the

5

neighborhood, which primarily consists of single-family detached dwellings. Fiant further testified that the proposed use would block access to the main road and cause traffic congestion, constituting a hazard to the Township road and to the residential neighbors. Fiant stated that there is a possibility that Prestige would grow, add additional employees, and increase the volume of staging activities taking place at the Property, which would be detrimental to the public welfare. Fiant confirmed that the owner of adjacent property located fifty feet from the Property had advised Fiant that he opposed the proposed variance. (R.R. at 96a-99a, 102a-05a.)

On cross-examination, Fiant testified that, on previous occasions, he passed the Property and observed equipment parked on the Property. Fiant also stated that the Board of Supervisors knew that Fonte submitted a zoning variance application when it issued its cease and desist notice. (R.R. at 110a-11a, 113a.)

Interested parties and Township residents also gave statements which may be summarized as follows: The Property's condition during the past two years is unacceptable because it is an eyesore and violates the Ordinance; Prestige's storage of chemicals on the Property may affect local water sources; notwithstanding Fonte's characterization, Prestige is actually operating out of the Property; Prestige's operations constitute a nuisance because they are loud and generate smoke and pungent smells from burning materials other than wood; Prestige's operations constitute a traffic hazard because the trucks and trailers completely block the road on occasion; the proposed variance would substantially alter the essential character of the neighborhood; and, if the variance was granted, it would set a dangerous precedent. (R.R. at 122a-30a.)

6

At the conclusion of the hearing, the Board moved to deny the variance request for failure to provide the required evidence of an unnecessary hardship. The motion was passed without objection. (R.R. at 136a.)

On October 17, 2014, the Board issued its decision denying Prestige's application for zoning variance. The Board made the following relevant findings of fact:

> 31. Although Fonte testified that there was "landscaping equipment" present on the Property at the time of the Township Inspector's visits, Fonte only vaguely testified that he "told the Inspector what [he] was doing" and that he was storing equipment there but operating the business from a Reading location.
>
> 32. Specifically, neither Fonte, nor his wife, Kelly Fonte, who also testified at the hearing, testified to telling the Inspector or any other Township official that the pole building and Property would be utilized for the operations of a commercial landscaping business.
>
> 33. Fonte did not testify as to having inquired with the Township as to whether a commercial use was lawful in the Rural Residential RR Zoning District in which the Property is located.
>
> 34. On the Permit Application, nothing was checked off as to the proposed use of the Property.
>
> . . .
>
> 59. There is no evidence that Township officials knew of or acquiesced in the use of the Property for the landscaping business at any time prior to the events leading to the issuance of the "Case and Desist" notice. Although Applicant testified to trucks and equipment on the Property for two (2) prior years, there is no specific testimony in the record that he informed any Township official of the operation of a commercial landscaping business, or any part of such a business from the Property.

7

60. The presence of trucks and equipment on a rural property does not necessarily equate to the open and obvious operation of a business on which Township officials could be deemed to have been on notice and/or acquiesced.

61. The Zoning Hearing Board *does not find credible the testimony of Pasquale Fonte and/or Kelly Fonte* on advising the Township of the intended commercial use of the Property and purpose of the pole barn.

(Board's Findings of Fact Nos. 31-34, 59-61) (emphasis added) (internal citations omitted).

Pursuant to its findings, the Board concluded that: the Property did not contain any physical characteristics or unique circumstances which create a hardship; any hardship incurred was self-inflicted and could have been avoided by reviewing the Ordinance; Prestige did not establish a claim for vested rights because Fonte did not establish the required due diligence and good faith, or provide evidence proving that the public health, safety, or welfare would not be adversely affected if the permit was issued; and the doctrine of variance by estoppel did not apply because Fonte did not demonstrate good faith, unnecessary hardship, or a long period of municipal failure to enforce the zoning law. Accordingly, the Board denied Prestige's variance application. (R.R. at 14a-27a.)

On October 27, 2014, Prestige appealed the Board's decision to the trial court, arguing that the Board erred in finding that Prestige was not entitled to a variance by estoppel. (R.R. at 229a.) On November 5, 2014, the Township intervened in the appeal. (R.R. at 1a, 203a.) On March 18, 2015, the trial court,

8

without taking additional evidence, issued an order granting Prestige's appeal for a variance with several conditions.[3] The Township filed a timely appeal to this Court.

In its opinion, the trial court concluded that Prestige met the test for a variance by estoppel because: Prestige stored its equipment on the Property for approximately two years without complaint; the Township representative visited the property multiple times and observed the equipment on the Property; Fonte advised the Township representative regarding the proposed purpose of the pole barn; Fonte acted in good faith, applied for a building permit, and constructed the pole barn only after the permit was issued; Fonte spent $80,000.00 to construct the building; and a residential homeowner would have no use for the structure. (Trial court op. at 8.)

Further, the trial court concluded that Prestige satisfied the elements necessary to establish a vested rights claim. The trial court stated that Fonte exhibited good faith throughout the proceedings and due diligence in attempting to comply with the law because the Township officials visited the Property, Fonte advised the officials regarding the purpose of the building, Fonte obtained a building permit before construction began, and "[t]here was no subterfuge concerning what was being constructed and its purpose." (Trial court op. at 6.) The trial court determined that Prestige satisfied the expenditure of substantial unrecoverable funds

---

[3] The trial court included the following conditions on the variance: the pole barn on the Property shall be used for the storage of Prestige's landscaping vehicles and equipment and the storage of tenant(s)'s personal property only; employees of Prestige may access the Property to retrieve and return equipment and may park their personal vehicles on the Property while using Prestige vehicles; only personal vehicles of employees assigned to use Prestige vehicles and equipment shall be permitted to remain outside the pole barn and no more than three Prestige commercial vehicles shall ever be permitted to be parked outside the pole barn; all commercial equipment shall be stored within the pole barn or other existing storage areas on the Property; no burning of any materials shall occur on the Property; except for five-gallon or smaller gasoline cans, no fuel shall be on the Property; and the boat shall be removed from the Property within thirty days. (R.R. at 272a-73a.)

prong for a vested right because Fonte spent $80,000.00 to construct the building and, because the "[b]uilding is too large to be used for anything other than the storage of large equipment and vehicles[,]" the sum is "unrecoverable if the variance would not be granted." (Trial court op. at 6.) The trial court found the remaining prongs satisfied because there was no appeal to the issuance of the building permit and the residents' concerns with the Property's proposed use was speculative and accommodated by the conditions the trial court included in its order. (Trial court op. at 6-7.)

On appeal,[4] the Township asserts that the trial court exceeded its authority because the Board's determination that Prestige did not establish entitlement to a variance by estoppel was supported by substantial evidence.

## Discussion

Initially, we note that a variance by estoppel is an unusual remedy that is granted only in the most extraordinary circumstances. *In re Kreider*, 808 A.2d 340, 343 (Pa. Cmwlth. 2002). To establish a claim for a variance by estoppel, the landowner must establish all of the following: (1) a long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of active acquiescence in the illegal use; (2) good faith and innocent reliance upon the validity of the use throughout the proceedings; (3) substantial expenditures in innocent reliance upon the landowner's

---

[4] Because the trial court did not take any additional evidence, our scope of review is limited to determining whether the Board committed an error of law or an abuse of discretion. *Glenside Center, Inc. v. Abington Township Zoning Hearing Board*, 973 A.2d 10, 15 n.11 (Pa. Cmwlth. 2009). An abuse of discretion occurs when the Board's findings are not supported by substantial evidence. *Id*. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*.

belief that the use was permitted; and (4) denial of the variance would impose an unnecessary hardship on the applicant. *Borough of Dormont v. Zoning Hearing Board of Borough of Dormont*, 850 A.2d 826, 828 (Pa. Cmwlth. 2004); *Teazers, Inc. v. Zoning Board of Adjustment of City of Philadelphia*, 682 A.2d 856, 860 (Pa. Cmwlth. 1996). To prove unnecessary hardship, the landowner must prove more than mere economic or personal hardship. *Pietropaolo v. Zoning Hearing Board of Lower Merion Township*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009). The hardship must be unique to the property and the zoning restriction sought to be overcome must render the property "practically valueless." *Borough of Dormont*, 850 A.2d at 828. To prevail on a variance by estoppel theory, a party must prove all of the essential elements by clear, precise, and unequivocal evidence. *Teazers*, 682 A.2d at 860.

The Township argues that the trial court exceeded its authority because the Board's conclusion that Prestige failed to establish the essential elements for a variance by estoppel was supported by substantial evidence.

When no additional evidence is taken, the trial court's scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *In re Brandywine Realty Trust*, 857 A.2d 714, 718 (Pa. Cmwlth. 2004). The Board is the sole judge of witness credibility and evidentiary weight. *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005). A reviewing court may not substitute its interpretation of the evidence for that of the Board; rather, the court is bound by the Board's determinations of witness credibility and evidentiary weight. *In re Rural Route Neighbors*, 960 A.2d 856, 860 (Pa. Cmwlth. 2008).

The trial court concluded that Prestige satisfied the elements for a variance by estoppel because the storage of Prestige's equipment was ongoing for

11

two years, no one complained about the use of the Property, and the Township representative knew the purpose of the pole barn and granted a building permit only after he visited the Property and saw the equipment in plain view. The trial court also found that Fonte acted in good faith throughout the proceedings, spent $80,000.00 to construct the pole barn, that a residential homeowner would have no use for the pole barn, and that a pole barn is of no use to anyone who does not own a business that uses large equipment. (Trial court op. at 8.) However, the trial court did not cite any record evidence or legal authority to support its conclusions. Instead of reviewing whether the Board's findings were supported by substantial evidence, the trial court improperly substituted its interpretation of the evidence for that of the Board.

The trial court first found that the combination of Prestige's storage of the equipment for two years, the lack of complaints, the Township representative's visit to the Property and observation of the equipment, and the issuance of the building permit constitute a long period of municipal failure to enforce the law and active acquiescence of the illegal use.

Fonte testified that the Township representative visited the Property and observed the landscaping equipment on the Property. Fonte stated that he advised the representative that he would operate Prestige from the Reading location and that he told the representative "what [he] was doing" with the pole barn on the Property. (R.R. at 47a.) However, although given the opportunity, neither Fonte nor his wife testified that they specifically advised the Township representative that the pole barn was intended to be used for a commercial purpose. More importantly, the Board rejected both Fonte's and his wife's testimony on this subject. (Board's Finding of Fact No. 61.)

12

The application for a building permit that Fonte submitted contained a section where the applicant could identify the building's proposed use. (R.R. at 185a.) However, Fonte left this section on the application blank and, when questioned, his only response was that "I can't give you an answer for that."[5] (R.R. at 83a.) Another section of the building permit application identifies the proposed use as "Utility," and, when given the opportunity, Fonte would not comment on that. (R.R. at 59a, 186a.) Thus, the record contains substantial evidence to support the Board's finding that the Township was not aware that the Property was used for a commercial purpose and therefore the Township did not engage in a long period of failure to enforce the ordinance.[6]

The trial court next concluded that Fonte acted in good faith and relied innocently upon the validity of the use throughout the proceedings because he applied for a building permit and built the pole barn only after the permit was issued. (Trial court op. at 8.)

At the Board's hearing, Fonte did not testify that he inquired with the Township whether a commercial use of the Property was lawful.[7] (Board's Finding

---

[5] The omission of this information from the building permit application is particularly striking because there is a checkbox labeled "Storage," which is the use Fonte maintained the pole barn was being used for throughout the proceedings. (R.R. at 49a-50a, 186a.)

[6] Moreover, the presence of vehicles on the Property when the Township representative inspected the Property and the prior two-year period of vehicle and equipment storage on the Property does not necessarily indicate that the Property was being used for a commercial purpose and certainly does not rise to the level of acquiescence of an illegal use. *Lockwood v. Zoning Hearing Board of Millcreek Township*, 540 A.2d 336, 339 (Pa. Cmwlth. 1988) ("Municipal failure to take action coupled with some knowledge by municipal officials has also been held insufficient to grant a variance by estoppel.").

[7] *See Skarvelis v. Zoning Hearing Board of Borough of Dormont*, 679 A.2d 278, 283 (Pa. Cmwlth. 1996) ("In order to establish that he acted in good faith, a property owner is required to **(Footnote continued on next page…)**

13

of Fact No. 33.) Moreover, although Fonte testified that landscaping equipment was present at the time of the Township representative's visit, the Board rejected Fonte's and his wife's testimony regarding their alleged advisement to the Township representative about the proposed commercial use of the pole barn on the Property as not credible. (Board's Finding of Fact No. 61.) Similarly, a proposed commercial use was not indicated on the building permit application. (Board's Finding of Fact No. 34.) In addition, after the pole barn's construction was nearly complete, Fonte applied for a variance, seeking a modification of the Property's principal use from a residential use to a commercial use. (R.R. at 142a-45a.) The application suggests that Fonte contemplated using the Property for commercial purposes notwithstanding his omission on the building permit application. Thus, the Board's determination that Fonte failed to demonstrate that he acted in good faith throughout the proceedings is supported by substantial evidence and is conclusive on appeal. Accordingly, Prestige cannot establish an essential element for a variance by estoppel.[8]

The trial court next concluded that the substantial expenditures prong was met because it determined that Prestige spent $80,000.00 to construct the pole barn, a residential homeowner would have no use for the pole barn, and the pole barn

---

**(continued…)**

show that he made a reasonable attempt to ascertain the actual status of the property under the Zoning Ordinance.").

[8] It is well established that good faith of the landowner is an important aspect of the variance by estoppel analysis. *See, e.g.*, *Hafner v. Zoning Hearing Board of Allen Township*, 974 A.2d 1204, 1213 (Pa. Cmwlth. 2009) (holding that variance applicant failed to establish a mandatory requirement for a variance by estoppel where good faith throughout the proceedings was absent); *In re Kreider*, 808 A.2d 340, 344 (Pa. Cmwlth. 2002) (rejecting variance by estoppel theory because landowner failed to establish that he acted in good faith throughout the proceedings).

14

is "completely useless to anyone who does not own a business that utilizes large pieces of equipment." (Trial court op. at 8.) However, Fonte submitted no documentation regarding the cost of constructing the pole barn. Indeed, the only testimony Fonte provided regarding the cost to construct the structure was in response to an inquiry asking whether Fonte should have done more research regarding the zoning status of the Property. Fonte stated that "I wouldn't stick $80,000 into a building . . . and do all that work knowing that I was going to be sitting here in front of all you guys."[9] (R.R. at 89a.) Although the sum is substantial, it does not necessarily follow that the expenditures were based on Fonte's innocent reliance on his belief that the commercial use was permitted. Fonte provided no testimony that he inquired with the Township as to whether a commercial use for the Property was lawful. (Board's Finding of Fact No. 33.) The only basis for Fonte's alleged belief that the proposed use was permitted was the issuance of the building permit, which, as previously noted, did not identify the structure's proposed use as the operation of a commercial enterprise. (R.R. at 185a.) Moreover, Fonte applied for a variance to change the zoning status from residential to commercial after the construction of the pole barn was nearly complete and the funds spent. Thus, the Board did not err in concluding that Fonte failed to prove that substantial expenditures were made in innocent reliance upon Fonte's belief that the commercial use was permitted.

Finally, based on its finding that Prestige constructed the pole barn at a considerable expense after relying on the issuance of the building permit, the trial

---

[9] Interestingly, in Fonte's application for the permit to construct the pole barn, the cost for the structure was estimated at $28,500.00. (R.R. at 186a.)

court concluded that the denial of a variance would impose an unnecessary hardship. (Trial court op. at 8.)

However, the Board found that a single family residence exists on the Property and the Property may be used for residential purposes. (Board's decision at 18.) In other words, the Property is in compliance with its current zoning classification and may be used for that purpose. The Board also found that the Property is not prohibited from being used for accessory storage. Accordingly, the Board properly concluded that no unnecessary hardship exists. The Property would not be rendered "practically valueless" without granting of the variance because there are lawful alternatives to a commercial use that make the Property valuable.

Consequently, Prestige did not establish an equitable right to relief under a variance by estoppel theory because Prestige did not sustain its burden to prove that: the Township engaged in a long period of acquiescence of the unlawful use; that it acted in good faith throughout the proceedings; that it made substantial expenditures in innocent reliance on the belief that the commercial use was permitted; or that the denial of the variance would impose an undue hardship. Therefore, the trial court exceeded its scope of review when it substituted its interpretation of the evidence for that of the Board.

Accordingly, for the foregoing reasons, the trial court's decision is reversed.[10]

_____
PATRICIA A. McCULLOUGH, Judge

---

[10] The Township also argues that Prestige's failure to meaningfully address the vested right theory of relief in its brief constitutes a waiver and, alternatively, that the trial court erred when it concluded that Prestige established a vested right. Although Prestige acknowledges the existence of alternative theories of equitable relief, it only identifies variance by estoppel in its statement of the question involved and in its summary of the argument. (Appellee's brief at 2, 7.) Similarly, Prestige exclusively discussed the variance by estoppel theory in its appellate brief and did not develop the vested right argument in any meaningful fashion. Accordingly, the argument is waived. *Brown v. Commonwealth*, 843 A.2d 429, 435 (Pa. Cmwlth. 2004).

However, we recognize that, although the two concepts are distinct, both theories are related and share common elements. *See Vaughn v. Zoning Hearing Board of Township of Shaler*, 947 A.2d 218, 224-25 (Pa. Cmwlth. 2008). Therefore, we are satisfied that, having already concluded that Prestige failed to prove entitlement to a variance by estoppel, Prestige also failed to prove entitlement to a vested right.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Prestige of Reading, PA, Inc.        :

                                  :   No. 603 C.D. 2015

            v.                :

                                  :

Zoning Hearing Board of the       :
Township of Brecknock,            :
Berks County, Pennsylvania,       :
and Township of Brecknock,      :
Berks County, Pennsylvania       :

                                  :

Appeal of: Township of Brecknock  :

## ***ORDER***

AND NOW, this 27th day of January, 2016, the March 18, 2015 order of the Court of Common Pleas of Berks County is reversed.

_____
PATRICIA A. McCULLOUGH, Judge