John D. SKARVELIS

v.

**ZONING HEARING BOARD OF BOROUGH OF DORMONT and Borough of Dormont.**

**Appeal of BOROUGH OF DORMONT, Appellant.**

Commonwealth Court of Pennsylvania.

Argued May 14, 1996.
Decided June 25, 1996.

Thomas H. Ayoob, III, for Appellant.

Gary Milnes, for Appellee, John Skarvelis.

Before DOYLE and SMITH, JJ., and RODGERS, Senior Judge.

DOYLE, Judge.

The Borough of Dormont (Borough) appeals an order of the Court of Common Pleas of Allegheny County which, based on the principle of variance by estoppel, reversed the decision of the Borough of Dormont Zoning Hearing Board (Board) denying the application of John Skarvelis for three of four variances he had requested under the Dormont Borough Zoning Ordinance (Zoning Ordinance).

The relevant facts, as found by the Board, are as follows.[1] The subject property, located in the Borough at 1662 Potomac Avenue, is in a district zoned R–2 Residential. Two-family dwellings are a permitted use as of right within the R–2 District. (Section 203.1 of the Zoning Ordinance.) Nonetheless, Skarvelis' two-family dwelling was in violation of the Zoning Ordinance since it was deficient in terms of the minimum lot size,[2] minimum lot width,[3] minimum side yard,[4] and minimum parking requirements[5] under the Zoning Ordinance.

As late as July of 1975, the property had been used as a single family residence in full conformity with the Zoning Ordinance.[6] Prior to the purchase of the property by Skar-

---

1. The trial court took no additional evidence in this case. Accordingly, on appeal to this Court, we must accept the findings of the Board as true and are bound by its determination unless those findings are not supported by substantial evidence, the Board committed an error of law, or the Board abused its discretion.

2. The minimum lot size for a two-family dwelling is 5,400 square feet. (Section 203.2 of the Zoning Ordinance.) The lot size of the property is only 3,600 square feet. (Board's Finding of Fact No. 16.)

3. The minimum lot width for a two-family dwelling is 60 feet. (Section 203.2 of the Zoning Ordinance.) The width of the subject property is only 36 feet. (Board's Finding of Fact No. 15.)

4. The minimum side yard requirement for a two-family dwelling is five feet. (Section 203.2 of the Zoning Ordinance.) The side yard of the subject property is four feet, ten inches. (Board's Finding of Fact No. 17.) The Board in fact granted the variance request from this requirement since the violation was de minimis.

5. A property with a two-family dwelling on it is required to have at least three off-street parking spaces. (Section 403 of the Zoning Ordinance.) The subject property has no off-street parking. (Board's Findings of Fact No. 18.)

6. The Board made this determination based on the fact that the Borough issued a building permit to a *prior owner* of the property on July 21, 1975, specifically allowing for renovations to the kitchen of a "single family house." (Board's Finding of Fact No. 7.)

velis in January of 1987,[7] however, the property was illegally converted into a two-family dwelling. At the hearing before the Board, Skarvelis' son, James Skarvelis, testified that the property was purchased as a two-family dwelling based upon the representations of the real estate agent who negotiated the sale of the property. However, the Board found that a search of the Borough's records would have revealed that no occupancy permits for the property as a two-family dwelling had ever been issued.[8] (Board's Finding of Fact No. 6.)

On March 9, 1987, approximately two months after Skarvelis purchased the property, the Borough Manager requested that the Borough be allowed to inspect the property in order to document the current configuration and use of the dwelling. In a telephone conversation with the Borough Manager on March 24, 1987, James Skarvelis informed him that "[t]he **house is a single family dwelling and that is the way it will be used.**" (Exhibit D; R.R. at 4a.) (Emphasis added.) (*See supra* note 7.) James Skarvelis further assured the Borough Manager that he would contact the Borough in approximately thirty days, after he returned from a trip to New York, and set up a mutually convenient time when an inspection of the property could be conducted. Neither Skarvelis nor his son contacted the Borough following that conversation, and on May 22, 1987, the Borough again requested an inspection of the property. Finally, the Borough's

Building Inspector was granted access to the property on May 27, 1987. The Borough's inspection revealed that the property had in fact been converted into a two-family dwelling.[9] On May 28, 1987, Skarvelis was notified in writing that the use of the property as a two-family dwelling was illegal under the Zoning Ordinance and would require the grant of several variances by the Board. The Borough's letter further stated that if no action was taken by the property owner before the end of August,[10] "**it will be presumed that you are intending to officially re-establish the single family use of the property.**" (Borough's Letter dated May 28, 1987; Exhibit G, Board's Hearing; R.R. at 7a.) (Emphasis added.)

No further action was taken by the Borough until October 25, 1994, at which time the Borough sent Skarvelis an enforcement notice requiring him to remove the second family unit by November 25, 1994.[11] As a result of this notice, Skarvelis applied to the Board for the necessary variances from the minimum lot size, lot width, side yard, and parking requirements for a two-family dwelling under the Zoning Ordinance. On December 15, 1994, the Board held a hearing at which time it ascertained the above-mentioned facts. The Board granted a variance from the side-yard requirement since the property was in substantial compliance, being only two inches short of the five feet mandated by the Zoning Ordinance. However, the

7. The Board found as a fact that John Skarvelis purchased the property in January of 1987. (Board's Finding of Fact No. 8.) However, a contemporaneous memorandum of a March 24, 1987 telephone conversation with James Skarvelis indicates that the house was titled in the name of John Skarvelis because his son, James Skarvelis, the true owner, was going through a divorce. (Exhibits D and E, Board's Hearing; Reproduced Record (R.R.) at 4a–5a.) Although this memorandum is technically hearsay, it was admitted into the record without objection.

8. In fact, there were no occupancy permits of any kind for the property since such permits are not required for single family dwellings. (Notes of Testimony at 20; R.R. at 38a.)

9. This determination was based on the fact that the dwelling had two separate kitchens, and that the first and second floors were independent from each other. (Memorandum from Bor-

ough's Building Inspector; Exhibit F, Board's Hearing; R.R. at 6a.)

10. According to the Borough's letter, Skarvelis was planning to be out of the country until August. Therefore, the Borough granted him an extension of time to decide whether he would file an appeal with the Board or make the necessary alterations to the property to bring it into compliance with the Zoning Ordinance.

If Skarvelis decided to convert the property back into a single dwelling use, he was informed that this could be accomplished "by simply dismantling the kitchen unit within the second family area." (Borough's Letter dated May 28, 1987; Exhibit G, Board's Hearing; R.R. at 7a.)

11. The Borough's action was prompted by Skarvelis' attempt to obtain a building permit so he could sell the property as a two-family dwelling. (Board's Finding of Fact No. 3.)

Board rejected all of the other variance requests since Skarvelis failed to demonstrate that he suffered from any unique hardship which would justify the grant of relief under the Pennsylvania Municipalities Planning Code.[12] In regard to the claim that the variances should have been granted based on the Borough's failure to promptly institute enforcement proceedings against the property owner, the Board specifically found that "[Skarvelis] presented no evidence that he relied upon the Borough's inaction, to his detriment, to justify a variance by estoppel." (Board's Opinion at 3.)

Skarvelis appealed this determination to the court of common pleas on the grounds that he was prejudiced by the Borough's inaction of over seven years and that he should have therefore been granted a variance by estoppel.[13] The court of common pleas reversed the Board and granted the appeal, concluding that Skarvelis had acted in good faith and would suffer substantial hardship if he were not granted relief. The Borough appealed the judgment of the court of common pleas to our Court.

The sole issue on appeal is whether the court of common pleas erred in concluding that the property owner is entitled to a variance by estoppel. For the reasons enumerated below, we hold that Skarvelis did not establish the necessary facts which would entitle him to the relief of variance by estoppel. Therefore, the decision of the trial court must be reversed.

■ Initially, we note that variance by estoppel is an unusual remedy under the law and is granted only in the most extraordinary of circumstances. *See Moses v. Zoning Hearing Board of the Borough of Dormont,* 87 Pa.Cmwlth. 443, 487 A.2d 481 (1985); *Camaron Apts., Inc. v. Zoning Board of Adjustment of the City of Philadelphia,* 14 Pa. Cmwlth. 571, 324 A.2d 805 (1974). In *Mucy v. Fallowfield Township Zoning Hearing Board of Washington County,* 147 Pa. Cmwlth. 644, 609 A.2d 591, 592 (1992) (citing *Appeal of Crawford,* 110 Pa.Cmwlth. 51, 531 A.2d 865 (1987), *cross petitions for allowance*

*of appeal denied,* 518 Pa. 656, 544 A.2d 1343 (1988)), we summarized the factors to be considered when determining whether to grant a variance by estoppel as follows:

1. A long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction with some form of *active acquiescence in the illegal use.* However, a mere showing that a municipality has failed to enforce the law for a long period of time is insufficient in itself to support the grant of a variance. (Emphasis added.)

2. Whether the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceedings. *But in assessing whether a landowner's reliance upon municipal inaction is reasonable, a landowner is duty bound to check the property's zoning status before purchase.* (Emphasis added.)

3. Whether the landowner has made substantial expenditures in reliance upon his belief that his use was permitted.

4. Whether the denial of the variance would impose an unnecessary hardship on the applicant, such as the cost to demolish an existing building.

■ Although the Borough in this case failed to pursue an enforcement action against Skarvelis until more than seven years had elapsed since it first notified him of the zoning violation, the mere passage of time does not, in itself, entitle a property owner to a variance by estoppel. *See Mucy; Crawford.* In those cases where we have granted a variance by estoppel, the municipalities have done more than passively stand by; they have committed some affirmative act, such as granting a building permit, which would reasonably lead a property owner to conclude that the proposed use was sanctioned under the law. *See, e.g., Knake v. Zoning Hearing Board of Dormont,* 74 Pa. Cmwlth. 265, 459 A.2d 1331 (1983) (variance by estoppel granted where the Borough failed to act for forty-four years, knew the use was impermissible for twenty-seven

12. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

13. The Borough intervened as a party before the trial court.

years, and *issued a building permit for the impermissible use* ); *Three Rivers Youth v. Zoning Board of Adjustment for the City of Pittsburgh*, 63 Pa.Cmwlth. 184, 437 A.2d 1064 (1981) (inaction by municipality for seven years plus **issuance of building permit by municipality and reliance by landowner on zoning officer's interpretation of zoning regulation**); *Township of Haverford v. Spica*, 16 Pa.Cmwlth. 326, 328 A.2d 878 (1974) (inaction by municipality for thirty-six years and **issuance of building permit with knowledge of municipality of intended construction**).

■ While the Borough had notice of the zoning violation for at least seven years in this case, it did not take any action which would constitute "active acquiescence" towards Skarvelis' continued illegal use of the property. Specifically, the Borough did not issue a building permit or engage in any other conduct which would have placed its imprimatur on the use of the property as a two-family dwelling. In fact, rather than misleading Skarvelis about the legality of the proposed use of the property, the Borough informed him within a few months of his purchase that the property violated the Zoning Ordinance and was illegal. The letter which the Borough sent Skarvelis on May 28, 1987 further stated that if he did not contact the Borough or file a zoning appeal with the Board, the Borough would assume that he had made the necessary alterations to the property so as to bring it into conformity with the Ordinance. Although the Borough might have been naive to believe James Skarvelis (supposedly the real owner) in March of 1987 when he assured the Borough Manager that the house would be used as a single-family residence, and could have been more diligent in following up its enforcement notice letter of May 28, 1987, Skarvelis has failed to point to a single affirmative act on the part of the Borough from which he could have reasonably inferred that the Borough had changed its opinion regarding the illegal use of the property as two-family dwelling. *See Richland Township v. Prodex, Inc.*, 160 Pa.Cmwlth. 184, 634 A.2d 756 (1993) (where prior enforcement action had been instituted thirteen years before, the property owner was on notice that similar enforcement proceedings could be instituted at any time).[14] Accordingly, Skarvelis has not met the first criterion for a variance by estoppel as enunciated in *Mucy* and the many other decisions of this Court.

■ Furthermore, we also conclude that Skarvelis failed to demonstrate the requisite good faith necessary to be entitled to a variance by estoppel. While we have no record evidence to doubt the veracity of Skarvelis' claim that at the time of purchase he believed that the property's use as a two-family dwelling conformed with the Zoning Ordinance, this is insufficient to establish good faith. Absent a local ordinance provision to the contrary, the law requires a prospective purchaser of real estate to make certain the property is in compliance with local zoning requirements, *Mucy*, and the purchaser may not rely on the statements of others, including dishonest real estate agents, to establish compliance. If this were not the law, the doors would certainly open wide for unscru-

---

14. In *Richland Township*, the municipality had actually obtained a judgment in the court of common pleas against the property owner in 1975. An enforcement action was then commenced in 1977. However, for reasons not apparent from the opinion, the case was terminated due to lack of prosecution prior to a determination on the merits. Finally, in 1990, thirteen years later, the municipality initiated a second proceeding and obtained an injunction against the owner prohibiting the illegal expansion of a nonconforming use in contravention of the zoning ordinance. We held that the owner was not entitled to a variance by estoppel since the prior judgment against it precluded any claim that it had "innocently and in good faith relied on the validity of its use." 634 A.2d at 762.

Although there is no prior judicial decision in this case, we believe that the letter from the Borough to Skarvelis served a similar function. In that letter, the Borough informed him that he was in violation of the Zoning Ordinance, and that he had to either comply with the Zoning Ordinance or appeal to the Board. Considering the Borough's letter, and the complete lack of any affirmative action by the Borough which would indicate that a two-family dwelling was permitted on the property, Skarvelis' belief that such a use was permitted was just as unjustified as was the belief of the property owner in *Richland Township*.

pulous individuals to perpetrate a fraud on local municipalities.

In order to establish that he acted in good faith, a property owner is required to show that he made a reasonable attempt to ascertain the actual status of the property under the Zoning Ordinance. *See Moses* (although owner determined that multi-family dwelling was a permitted use generally in the district and the subject property had previously been used for such use, owner found not to have acted in good faith since an inquiry with the zoning authority would have disclosed that an occupancy permit for that use had never been issued for the property); *Schaefer v. Zoning Board of Adjustment of the City of Pittsburgh*, 62 Pa.Cmwlth. 104, 435 A.2d 289 (1981) (lack of knowledge is irrelevant where owner failed to make inquiry with zoning authority as to true status of property or ask for documentation demonstrating compliance from seller). If Skarvelis had searched the Borough's records here, he would have found that an occupancy permit for the property as a two-family dwelling had never been obtained.[15] This would have put him on notice that there was a problem with the property and would have lead a reasonable person to inquire further regarding possible limitations on the use of the property. In this respect, the present case is distinguishable from *Knake* in which we upheld the grant of a variance by estoppel where the municipality did not require occupancy permits at the time the property was originally purchased.

We also reject the contention of Skarvelis that he was justified in his belief because of the representations of the real estate agent who negotiated the sale of the property. While we certainly do not endorse such conduct by members of the real estate profession, even if such were true in this case, a property owner simply cannot acquire a right to a variance by estoppel through the actions or representations of prior owners, real estate agents, or other third parties who do not speak for the municipality. *See Schaefer*, 435 A.2d at 292 ("The doctrine of estoppel requires an innocent and justifiable reliance by the party seeking the estoppel upon the *conduct or representations of the [municipality]*.") (Emphasis added.) One who purchases property based on the representations of the seller, rather than making an independent investigation of the true status of the property, proceeds at his or her own risk, and cannot later complain that a variance should be granted if those representations prove to be false. *See id.*

Finally, although Skarvelis alleges that he paid a premium for the property because it could be rented as a two-family dwelling, he admits that the structural improvements to the property were made before he purchased the property. Therefore, Skarvelis cannot claim that *he* made substantial expenditures to improve the property as required to obtain a variance by estoppel. *See Mucy; Knake.* Moreover, Skarvelis has shown only that he will suffer some economic hardship if he is denied the variances. While the denial of the variances undoubtedly will diminish the value of the property,[16] it simply

---

15. Although the Borough did not require occupancy permits for single family dwellings, the Board found that such permits were required for multi-family dwellings. (Board's Findings of Fact No. 5.) *See supra* note 8.

16. We recognize that the value of the property as a single family home is less than if the property could be rented as a two-family dwelling. We further recognize that in order to comply with the Zoning Ordinance, Skarvelis would have to remove the fixtures from one of the kitchens. *See supra* note 10. While this may require some expenditure of money, it is much less of a burden than where denying a variance would necessitate tearing down an entire house or would preclude any use of the property whatsoever. *See Mucy; Klanke v. Zoning Board of Adjustment of the City of Pittsburgh*, 83 Pa.Cmwlth. 441, 477 A.2d 907,

910 (1984) (Unnecessary hardship "requires that the physical characteristics of the property be such that it cannot be used for any permitted purpose or for a permitted purpose only at prohibitive expense, or that the characteristics of the area are such that the property has no value or only a distress value if restricted to a permitted use."). In any case, Skarvelis' predicament is partly of his own making since an investigation of the Borough's records prior to his purchase would have alerted him to the fact that the property was in violation of the Zoning Ordinance. *See Camaron Apts.*, 324 A.2d at 807 ("no special consideration can be afforded an applicant who knew or *should have known* of the zoning problem at the time he purchased the property and of the possibility of resultant hardship") (emphasis in original); *see also Hasage v. Philadelphia*

does not constitute an unnecessary hardship since the property will not be rendered "almost valueless without the grant of a variance." *Schaefer*, 435 A.2d at 292. Absent the existence of unnecessary hardship as required under the fourth prong of *Mucy*, Skarvelis is not entitled to relief. *See Mucy*, 609 A.2d at 594 ("not sufficient to show mere economic hardship or that the property could be utilized more profitably if a variance were granted"); *Schaefer* (rejecting apartment owners' argument that they were entitled to a variance where they had invested in property based on their belief that greater number of apartments were allowed and where restriction on number of apartments would prevent them from realizing a reasonable profit).

Accordingly, the order of the trial court is reversed, and the decision of the Board denying Skarvelis' request for a variance from the lot size, setback and parking requirements for a two-family dwelling under the Zoning Ordinance is reinstated.

### ORDER

NOW, June 25, 1996, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby reversed; and the order of the Zoning Hearing Board of the Borough of Dormont is reinstated.

*Zoning Board of Adjustment*, 415 Pa. 31, 202 A.2d    61 (1964).