# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Michael Lieberth and Hilda Lieberth, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 330 C.D. 2016 |
| | : | |
| Borough of Oakmont Zoning | : | Argued: November 14, 2016 |
| Hearing Board | : | |
| | : | |
| v. | : | |
| | : | |
| Borough of Oakmont | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE MICHAEL H. WOJCIK, Judge
                    HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## *OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                              FILED:  December 15, 2016

Michael Lieberth and Hilda Lieberth (Appellants) appeal from the January 29, 2016 order of the Court of Common Pleas of Allegheny County (trial court) affirming the decision of the Zoning Hearing Board (Board) of the Borough of Oakmont (Borough) issued June 17, 2015, which denied Appellants' request for approval of a special exception, variance, or otherwise to use the Property as an auto sales lot.

## Facts and Procedural History

Appellants own three contiguous lots in the Borough located at 10, 12, and 14 West Woodland Avenue (collectively, "the Property") in the R-3 Residential zoning district.[1]  Prior to the adoption of the Borough's current zoning ordinance (Ordinance) on October 13, 2014, the Property had been zoned commercial.  (Board's Findings of Fact Nos. 1, 13-15, 20, 34.)

On November 14, 2014, Appellants filed an application with the Board for permission to use the Property as an auto sales/used car lot.  The application requested authorization of "a [u]se by Special Exception," and noted that Appellants were appealing sections 205-502 and 205-415 of the Ordinance, which noted the requirements for an "Automobile Sales and Service" use by Special Exception and as a Conditional Use, respectively.  The Ordinance defines "Automobile Sales and Service" as:

> A business establishment used for the display or sale of automobiles, noncommercial trucks, motorcycles, motor homes, recreational vehicles and/or boats under 26,000 pounds gross vehicle weight (GVW), but not including any heavy equipment or any other vehicle or equipment which is not classified as a "motor vehicle" under the Pennsylvania Motor Vehicle Code.  Such use may also include the servicing or repair of vehicles of the brand of vehicles sold at the establishment.

Ordinance, §205-201 (Definitions).  However, an "Automobile sales and service" use was not authorized by the Ordinance in an R-3 Residential district; it is not permitted by right, by special exception, or as a conditional use.  Ordinance, Chart C, Principal Land Use Table, 205 Attachment 3:1.  Therefore, Appellants could not obtain an auto

---

[1] The individual lots are referred to as lots 10, 12, and 14, respectively.

sales use unless they could establish a nonconforming Use. (Board's Findings of Fact Nos. 1-2, 33-34, 44; Reproduced Record (R.R.) at 242a-43a.)

The Board held its initial hearing on Appellants' request on January 28, 2015, where Appellants submitted testimony and evidence in support of their contention that the nonconforming use of auto sales existed on the Property. In the event Appellants established a nonconforming use, but that of a commercial parking lot, Appellants requested permission to utilize the process set forth in section 205-1205(E) of the Ordinance for a change of nonconforming use to an "Automobile Sales and Service" use. Section 205-1205(E) of the Ordinance provides:

> **Change of nonconforming use.** A nonconforming use all or partially conducted in a nonconforming structure or structures may be changed to another nonconforming use **only upon determination by the Zoning Hearing Board, after public hearing that the proposed new use will be more conforming to its neighborhood and surroundings than the use it is to replace. In determining such relative conformity, the Board shall review the written report of the Zoning Officer, which shall include the recommendations of the Planning Commission.** This report shall take into consideration specific characteristics of this new nonconforming site and how said new site functions in relation to its surroundings. Factors to be considered must include, but are not limited to: proposed parking expansions or reductions, change in vehicle and/or pedestrian entryways, potential traffic patterns and/or congestion generated, hours of operation and anticipated levels of walk-in traffic, proposed or potential arising nuisance characteristics such as emission of noise (if produced), dust (if produced), odors (if produced) and smoke (if produced/emitted), the extent to which vibrations and fire hazards may be created based upon the land use activity, and any other proposed and/or continued nonconformance with the Zoning Ordinance. **The Zoning Officer will denote a comparison between the above factors as generated by the existing and the proposed land use.** The Zoning Officer may request the assistance of

3

other applicable Borough agencies, or any assignee(s), in developing this report.

Ordinance, §205-1205(E) (emphasis added).

For Appellants to be granted a change in nonconforming use, the Board needed to determine that the proposed use of auto sales would be more conforming to its neighborhood and surroundings than the nonconforming use of a commercial parking lot, if established. *Id.* In making its conformity determination, the Ordinance required the Board to review a written report prepared by the Zoning Officer, which had to include the Planning Commission's recommendation with respect thereto. *Id.* The Board permitted Appellants to utilize this procedure and continued the hearing until May 13, 2015, at which time the Board accepted into evidence the Zoning Officer's report. At the hearing, the Borough and several residents opposed Appellants' request. (Board's Findings of Fact Nos. 3-10, 42-43.)

Following the submission of written closing arguments, the Board issued a decision on June 17, 2015, which denied Applicants' request "for approval for a special exception, variance or otherwise to use the Property as an auto sales lot." (Board's decision at 10, Board's Findings of Fact Nos. 4, 11-12.) The Board made the following factual findings as to the historical use of the Property by Appellants:

25. On October 1, 1987, [Appellants] were granted a certificate of occupancy for a "single dwelling structure" on lot 12.

26. On December 29, 1989, [Appellants] were granted a certificate of occupancy for a "residential structure" on lot 10.

27. On April 22, 1997, [Appellants] were granted a certificate of occupancy "for possible office space" on lot 14. This use was never established.

4

28. On November 11, 2000, [Appellants] applied for a "Permit for Alteration or Repair of Building, Interior Alterations, New Fronts, Roofs, Fences, Bay Windows, Cornices, Etc." on lot 14 (the "Demolition Permit"). This permit provided "site to be used for parking." This permit only referred to Lot #362-F-00052 which is 14 West Woodland Avenue, one of the three (3) lots making up the Property.

29. There are a few things to note about the "demolition permit." First, it is a demolition permit; not for a certificate of occupancy. Second, it is only for one of the three lots in question. Even if it was true that the Demolition Permit confers some type of nonconforming parking lot use status for Lot 14 (which the Board does not think to be the case), that use cannot be expanded onto another lot or recognized as such. Therefore, at best, [Appellants] established a use as a parking lot on Lot 14 only.

30. At no time did the Borough issue a permit for auto sales on the Property.

31. In fact, such a use was specifically denied in 2014.

32. On July 29, 2014, [Appellants] applied for a certificate of occupancy for an auto sales lot.

33. On July 31, 2014 the Borough denied the application because the use was not permitted in the newly proposed R-3 Zoning District. The denial was signed by the then zoning officer, Ed Crates, and stamped by the Borough on August 1, 2014. [Appellants] did not appeal this decision.

(Board's Findings of Fact Nos. 25-33) (citations to original record omitted). The Board then described Appellants' proposal and Mr. Lieberth's testimony:

34. [Appellants'] proposal seeks to combine the use of three (3) lots comprising approximately a 22,606 square foot area as a used car lot.

5

35. Mr. Lieberth testified he wanted to continue the use of these lots in connection with how he previously used them as an annex to 303 Hulton Road, [now] known as the "Speedway."

36. Mr. Lieberth testified that he was planning on displaying around an average of 20 cars on the Property and would have around half a dozen or less customers per day.

37. The cars would not be serviced or repaired.

38. Mr. Lieberth testified that he used the Property for used car trade-ins since 1987.

39. Mr. Lieberth further testified that **occasional sales** occurred on the Property and were processed through a sales office.

(Board's Findings of Fact No. 34-39) (citations to original record omitted and emphasis added).

The Board concluded that Appellants failed to meet their burden to establish the continuing nonconforming use of an auto sales lot, reasoning that the original certificates of occupancy for the Property indicated that it was used for residential use; when Appellants closed their dealership located at 303 Hulton Road (which is now operated as a "Speedway"), they transferred their Auto Sales license to Natrona Heights; Appellants did not have a license to sell cars on the Property and Mr. Lieberth testified that he was "getting around to getting the license transferred back to Oakmont;" and, the accessory structures on the Property were uncertified structures. (Board's Findings of Fact Nos. 22-24; Board's Conclusion of Law No. 46).

Additionally, the Board concluded that Appellants failed to meet their burden to establish the continuing nonconforming use of a commercial parking lot, noting that the demolition permit did not establish a nonconforming use as a parking

6

lot; Mr. Lieberth's counsel acknowledged that the demolition permit "had nothing to do with the use of the property . . . it was a demolition permit really;" even if the demolition permit indicated that there was a parking lot use, the permit was only for lot 14 and the parking lot use could not be deemed to have extended to the other lots; the Property was previously used for residential purposes; and Appellants failed to meet the procedural requirements for a request to change any nonconforming commercial parking lot use to another nonconforming use, i.e., auto sales.[2] (Board's Conclusions of Law No. 45.)

The Board also concluded that Appellants failed to meet their burden to establish a use variance because they presented no evidence to demonstrate the legal requirements for the same and failed to follow the proper procedure for such request. Moreover, the Board determined that Appellants had adequate notice of the rezoning of the Property. (Board's Conclusions of Law Nos. 47-48; *see* Board's Findings of Fact Nos. 14-21.)

Appellants appealed the Board's decision. The trial court took no additional evidence and issued an opinion and order dated January 29, 2016, affirming the Board's decision and determining that the Board properly found that Appellants presented no evidence that any legal, nonconforming use existed on the Property. The trial court acknowledged Mr. Lieberth's testimony that he wanted to continue to use the Property as an annex to 303 Hulton Road, which currently houses a Speedway convenience store, that he used the Property for used car trade-ins since 1987, and that "intermittent" sales occurred on the Property, processed through a

---

[2] The Board noted that Appellants did not apply for an application to change a nonconforming use to another nonconforming use under section 205-1205(E) of the Ordinance; instead, Appellants applied for a Special Exception that was unavailable for them. (Board's Conclusion of Law No. 45(f).)

sales office. (Trial court op. at 3.) However, the trial court stated that Appellants did not present evidence that an occupancy permit existed for any of the three lots and did not present evidence of "for sale" signs on cars. Importantly, the trial court stated that Appellants failed to present any documentary evidence relating to auto sales or commercial parking on the Property. In addition, the trial court noted that photographs of the Property showed vehicles parked mostly on grass areas and the interior of the buildings did not appear to contain items related to car sales or repairs.[3]

On appeal to this Court,[4] Appellants contend that the trial court erred in determining that Appellants failed to meet their burden of proving a continuing nonconforming use because they presented substantial evidence of the same. Moreover, Appellants argue that the Borough's knowledge of the long-time use of the Property as an auto sales lot, and the failure to enforce any violation with respect thereto, entitles them to a variance by estoppel. Finally, Appellants claim that their due process rights were violated by being denied the right to continue using their property as a nonconforming commercial parking lot.

The Borough responds that the trial court correctly upheld the Board's decision because Appellants failed to satisfy their burden of proving the existence of a nonconforming use on the Property prior to the Borough's adoption of its

---

[3] The trial court also noted that the Borough presented evidence that there was no nonconforming use, the occupancy permit for a possible office space was never established, and that the occupancy permit application for automobile sales was denied in 2014.

[4] When the trial court takes no additional evidence, our scope of review is limited to determining whether the zoning hearing board committed an error of law or an abuse of discretion. *Riverfront Development Group, LLC v. City of Harrisburg Zoning Hearing Board*, 109 A.3d 358, 363 n.8 (Pa. Cmwlth. 2015). An abuse of discretion occurs when a zoning hearing board's findings are not supported by substantial evidence, i.e., such evidence as a reasonable mind would find adequate to support the findings. *Collier Stone Company v. Zoning Hearing Board for the Township of Collier*, 710 A.2d 123, 125 (Pa. Cmwlth. 1998).

Ordinance in 2014.  Moreover, the Borough contends that Appellants' argument that an automobile sales use would be "more conforming" than that of a commercial parking lot is irrelevant because there can be no modification of a nonconforming use that Appellants failed to establish.  Additionally, the Borough contends that Appellants failed to establish any procedural error or due process violation with regard to the Borough's adoption of the Ordinance.

## Discussion

The Ordinance defines a nonconforming use as "[a] use, whether of land or of structure, which does not comply with the applicable use provisions in this chapter or an amendment hereafter enacted, where such use was lawfully in existence prior to the enactment of this chapter or amendment."  Ordinance, §205-201.  The Ordinance also provides:

> Within the zoning districts established by this chapter, there exist uses and lots of land that were lawful before this chapter's adoption but which are now prohibited, regulated or restricted under the terms of this chapter. **It is the intent of this chapter to permit these nonconformities to continue until they are removed, but not to encourage their survival.** Such uses are considered incompatible with the permitted uses in the zoning districts involved.

§205-1201(A) (emphasis added).  "A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction . . . and the right to continue a legal nonconforming use is entitled to the constitutional protection of due process." *Hunterstown Ruritan Club v. Straban Township Zoning Hearing Board*, 143 A.3d 538, 545 (Pa. Cmwlth. 2016).  In *Hunterstown Ruritan Club*, we recognized that "'[a] lawful nonconforming use establishes in the property owner a vested right which cannot be abrogated or destroyed, unless it is a nuisance, it is abandoned, or it is

9

extinguished by eminent domain.'" *Id*. (quoting *Pennsylvania Northwest Distributors, Inc. v. Zoning Hearing Board of Moon Township*, 584 A.2d 1372, 1375 (Pa. 1991)). Although the continuation of nonconforming uses are provided constitutional protection, "it is the policy of the law to closely restrict such uses." *Appeal of Atlantic Richfield Company*, 465 A.2d 1077, 1080 (Pa. Cmwlth. 1983).

## 1. Continuation of a Nonconforming Use

First, Appellants argue that the trial court and Board erred in determining that they failed to establish a nonconforming use on the Property.

It is well established that the burden of proving the existence and extent of a nonconforming use is on the property owner. *Jones v. North Huntingdon Township Zoning Hearing Board*, 467 A.2d 1206, 1207 (Pa. Cmwlth. 1983). "This burden includes the requirement of conclusive proof by way of objective evidence of the precise extent, nature, time of creation and continuation of the alleged nonconforming use." *Id*.

Appellants assert that they submitted substantial evidence proving a continuing use of the Property as a used car dealership and/or a commercial parking lot. (Appellants' brief at 14.) Appellants contend that they should be permitted to use the Property as an auto sales lot as a continuation of a nonconforming auto sales use. Alternatively, Appellants argue that they established a nonconforming commercial parking lot use and the requested nonconforming auto sales use should be permitted as a natural expansion of the same.[5]

---

[5] Notably, Appellants do not argue that the trial court or Board erred in determining that Appellants failed to satisfy their burden of proving a change of nonconforming use, i.e., from that of a commercial parking lot to an auto sales use, under section 205-1205(E) of the Ordinance.

Addressing Appellants' arguments in reverse order, we note that Appellants failed to raise the issue of natural expansion of a nonconforming use before the Board or the trial court. It is well established that issues not raised in the lower court are waived and cannot be raised for the first time on appeal. *Agnew v. Bushkill Township Zoning Hearing Board*, 837 A.2d 634, 640 (Pa. Cmwlth. 2003) (citing Pa.R.A.P. No. 302(a)); *see Myers v. State College Zoning Hearing Board*, 530 A.2d 526, 527 (Pa. Cmwlth. 1987) (recognizing that a new theory of relief cannot be introduced on appeal when it was not presented to the zoning hearing board). Hence, Appellants' argument pertaining to the natural expansion of a nonconforming use will not be addressed on appeal because it has been waived.

However, the question remains whether Appellants established a legal nonconforming auto sales use of the Property, which would entitle them to a continuation of such use. Appellants argue that they submitted testimony that they conducted transactions on the Property in selling vehicles and processing the necessary paperwork for the transactions. In addition, Appellants offered photographs of the Property. The Board, however, considered and rejected such testimony and evidence. As we stated in *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 811 (Pa. Cmwlth. 2005).

> [T]his Court may not substitute its interpretation of the evidence for that of the zoning hearing board. It is the function of a zoning hearing board to weigh the evidence before it. The board is the sole judge of the credibility of witnesses and the weight afforded their testimony. Assuming the record contains substantial evidence, we are bound by the board's findings that result from resolutions of credibility and conflicting testimony rather than a capricious disregard of evidence.
>
> A zoning board is free to reject even uncontradicted testimony it finds lacking in credibility . . . .

11

*Id*. (citations omitted). We note that Appellants testified to only occasional sales at the Property, and photographs of the Property did not suggest the existence of an auto sales lot. Moreover, Appellants submitted no documentary evidence that auto sales were ever conducted on the Property.

Appellants had the burden to prove the existence of a nonconforming auto sales use on the Property, which included Appellants' obligation to submit conclusive proof, by the way of objective evidence, of the precise extent, nature, time of creation, and continuation of the alleged use. *Jones*, 467 A.2d at 1207. We discern no error in the Board's determination that Appellants' evidence failed to establish the nonconforming use of an auto sales lot on the entire Property.[6]

## 2. Estoppel

Next, Appellants argue that the Borough knew that auto sales were occurring on the Property for a period of fifteen years and never objected or tendered a violation notice as to the same. Therefore, Appellants contend that the Borough is estopped from denying Appellants the necessary permits to continue such use, and assert entitlement to a variance by estoppel. We disagree.

As we have previously noted, variance by estoppel is an unusual remedy under the law and is granted only in the most extraordinary of circumstances. *Skarvelis v. Zoning Hearing Board of Borough of Dormont*, 679 A.2d 278, 281 (Pa. Cmwlth. 1996). The factors to be considered in determining whether to grant a variance by estoppel are: (1) a long period of municipal failure to enforce the law, when the municipality knew or should have known of the violation, in conjunction

---

[6] Without establishment of the existence of the nonconforming auto sales use prior to adoption of the Ordinance, we need not determine whether such nonconforming use was lawful.

12

with some form of **active acquiescence** in the illegal use; (2) whether the landowner acted in good faith and relied innocently upon the validity of the use throughout the proceedings; (3) whether the landowner has made substantial expenditures in reliance upon his belief that the use was permitted; and (4) whether the denial of the variance would impose an unnecessary hardship on the landowner, such as the cost to demolish an existing building. *Id*.

However, "the mere showing that a municipality has failed to enforce the law for a long period of time is insufficient in itself to support the grant of a variance." *Id*. As we have previously recognized:

> In those cases where we have granted a variance by estoppel, the municipalities have done more than passively stand by; they have committed some affirmative act, such as granting a building permit, which would reasonably lead a property owner to conclude that the proposed use was sanctioned under the law.

*Id*.

Here, Appellants failed to allege facts or submit evidence to show the Borough actively acquiesced in any auto sales use. Rather than grant Appellants' application for a certificate of occupancy for an auto sales use, the Borough denied the same. There is no evidence that the Borough issued a building permit, or any other permit, that could show active acquiescence of the Borough in an auto sales use on the Property. Additionally, Appellants made no argument and submitted no evidence that they made substantial expenditures in reliance upon a belief that the auto sales use was permitted. Moreover, Appellants have failed to offer evidence that the denial of a variance by estoppel would impose an unnecessary hardship on them.[7]

---

[7] Indeed, the only argument Appellants' counsel made with respect to unnecessary hardship was to a requested use variance, as follows:
**(Footnote continued on next page…)**

13

Thus, Appellants' argument that the Borough should be estopped from denying Appellants the necessary permits to continue an auto sales use is devoid of merit.[8]

**Conclusion**

Based on our review of the record, the Board did not abuse its discretion or commit an error of law in determining that Appellants failed to satisfy their burden

_____

**(continued…)**

> Now, lastly, of course, is the variance, the use variance. I mean, that is up to the board. I don't see how it does any harm to the community.
>
> Does he have a hardship? You know, legally, does he have a hardship? That is your judgment to make.

(R.R. at 110a.) Appellants' counsel stated that it was a hardship "from the standpoint of being unfair . . . looking at it from that standpoint, I think you could give him a use variance also." *Id.*

[8] Appellants also claim that their due process rights were violated by being denied the right to continue using their property as a nonconforming **commercial parking lot**. (Appellants' brief at 31.) However, such argument is immaterial to our review of whether Appellants established a continuing nonconforming use of an **auto sales lot**. Furthermore, it is difficult to discern Appellants' argument in this regard. We merely note that, to the extent Appellants argue that adoption of the Ordinance effected a "taking" of their Property without just compensation and/or constituted illegal spot zoning, Appellants failed to raise the same before the trial court or the Board and, therefore, those arguments have been waived. *Agnew*, 837 A.2d at 640.

Assuming *arguendo* that the due process argument is somehow relevant to our review of whether Appellants established the nonconforming use of an auto sales lot, the Board found that Appellants had adequate notice of the rezoning of their Property. (Board's Conclusion of Law No. 48; Board's Findings of Fact Nos. 14-21.) It is for the Board, and not this Court, to resolve conflicting testimony and assign weight to the evidence before it. *Taliaferro*, 873 A.2d at 811. As there is substantial evidence in the record to support the Board's findings in this regard, we will not disturb such findings on appeal. *Id.* Thus, we discern no due process violation.

14

of proving the existence of a nonconforming auto sales use on the Property. Moreover, Appellants failed to establish the elements of variance by estoppel. Because an "Automobile sales and service" use is not authorized in the Property's R-3 Residential zoning classification, we discern no error in the Board's denial of Appellants' request to use the Property as an auto sales lot.

Accordingly, the order of the trial court is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Lieberth and Hilda Lieberth, :
Appellants :
:
:
v. : No. 330 C.D. 2016
:
Borough of Oakmont Zoning :
Hearing Board :
:
:
v. :
:
Borough of Oakmont :

## ***ORDER***

AND NOW, this 15th day of December, 2016, the order of the Court of Common Pleas of Allegheny County, dated January 29, 2016, is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge