# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dawn Welsh,                  :
             Appellant        :
                                :
            v.               :    No. 265 C.D. 2022
                                  :    SUBMITTED: December 30, 2022
Zoning Hearing Board of Stroud    :
Township                           :

BEFORE:    HONORABLE ANNE E. COVEY, Judge
                  HONORABLE ELLEN CEISLER, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**             **FILED: April 21, 2023**

Landowner, Dawn Welsh, appeals from an order of the Court of Common Pleas of Monroe County that affirmed a decision of the Zoning Hearing Board of Stroud Township (ZHB). In its decision, the ZHB denied Landowner's appeal of an Enforcement Notice issued by the Township's Zoning Officer for the keeping of chickens on her property as an accessory use in violation of the Township Zoning Ordinance.[1] We affirm the trial court.

## I. Background

The facts of this case are essentially undisputed.[2] Landowner owns property located at 6206 Pinecrest Drive, East Stroudsburg, Pennsylvania

---

[1] Stroud Twp., Pa. Zoning Ordinance (1998).

[2] The trial court did not take additional evidence. As such,

**(Footnote continued on next page…)**

(Property), within the Township's R-3 Residential Zoning District. (ZHB's Nov. 1, 2021 Decision, at page 1, Findings of Fact "F.F." Nos. 1 and 3, Conclusions of Law No. 2.) The Property consists of approximately 0.47 acres and is improved with a single-family residence. (F.F. No. 3.) On July 23, 2021, the Zoning Officer issued the Enforcement Notice to Landowner following the receipt of a complaint from a neighbor. The Enforcement Notice indicates that Landowner had established on the Property the accessory use of the keeping of animals without meeting the requirements set forth in Section 27-508.1.D of the Ordinance, and orders Landowner to correct all violations within 30 days. (F.F. No. 4.) Section 27-508.1.D of the Ordinance, titled "Accessory Use Requirements," provides:

> 1. Accessory uses on the same lot and customarily incidental to the permitted use are permitted by right by the Zoning Officer. Accessory uses shall comply with all yard regulation. The term "accessory use" may include the following uses which shall comply with the provisions listed below:
>
> . . .
>
> D. Keeping of animals. **The keeping of customary household pets and the keeping of farm animals for domestic use on residential lots is permitted without a**

---

this Court may not substitute its interpretation of the evidence for that of the [ZHB], the fact[]finder in this case. The [ZHB] is the sole judge of the credibility of witnesses and the weight to be afforded their testimony. Thus, it is the [ZHB]'s function to weigh the evidence before it. If the record contains substantial evidence, this Court is bound by the [ZHB]'s findings that result from the resolution of credibility and conflicting testimony.

*Victory Gardens, Inc. v. Warrington Twp. Zoning Hearing Bd.*, 224 A.3d 1110, 1115 (Pa. Cmwlth. 2020) (citations omitted). Substantial evidence is defined as such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pequea Twp. v. Zoning Hearing Bd. of Pequea Twp.*, 180 A.3d 500, 504 n.1 (Pa. Cmwlth. 2018).

**zoning permit and is subject to the following requirements:**

> (1) A maximum of five customary household pets may be kept.

> (2) **The keeping of farm animals such as cattle, horses, goats and pigs shall require a minimum lot area of three acres plus an additional 1/2 acre of land for each animal more than the first animal.**

> (3) **Stables, runways or animal exercise pens shall be located a minimum of 60 feet from property lines or road right-of-way lines.**

(Original Record "O.R." at 38, 40) (emphasis added). In turn, Section 27-202 of the Ordinance defines the term "customary household pets" as: "Domestic animals typically kept as pets such as dogs, cats, small birds, gerbils, rabbits and other animals commonly sold in retail pet shops, excluding fish. **For purposes of this chapter, chickens shall not be considered customary household pets**."[3] (*Id.* at 43) (emphasis added). Landowner promptly appealed the enforcement notice and a hearing was held before the ZHB on October 6, 2021.[4]

The Zoning Officer testified that at some time prior to issuing the Enforcement Notice, he visited Landowner's Property in response to a neighbor's complaint regarding numerous chickens and an attendant odor. (F.F. No. 10.) During this visit he observed approximately 10-15 chickens on the Property and

---

[3] We note that the portion of this definition in bold typeface was added by Ordinance Number 7-2019, October 15, 2019. (O.R. at 43.)

[4] Landowner also wrote a two-page letter to the Zoning Officer in which she argued that she was not in violation of the Ordinance because her chickens are a food source, not pets or large animals which require additional acreage, *i.e.* cattle, horses, goats, or pigs. Further, Landowner offered to move the runs she installed to protect her chickens, so as to come into compliance with the Ordinance. (O.R. at 44-45.)

chicken coops on either side of the front yard. (F.F. No. 11; Notes of Testimony, Oct. 6, 2021, "N.T." at 21.) Based on these observations, the Zoning Officer determined that Landowner was in violation of Section 27-508.1.D of the Ordinance regarding the keeping of farm animals as an accessory use given her undersized lot, and therefore issued the Enforcement Notice.

On cross-examination, the Zoning Officer admitted that: chickens are specifically excluded from the Ordinance's definition of household pets; the complaint of odor from the Property did not serve as a basis for the Enforcement Notice; he was appointed Zoning Officer in January 2021; and he did not speak or consult with anyone prior to issuing the Enforcement Notice. (F.F. No. 15.) The Zoning Officer also clarified that he took into consideration the Ordinance's definition of the word "farm" – which includes poultry – when issuing the Enforcement Notice. (N.T. at 30.) It bears noting that the ZHB voted unanimously to exclude cross-examination of the Zoning Officer regarding Landowner's selective enforcement and estoppel issues, e.g. whether the Zoning Officer reviewed any enforcement notices his predecessor sent to Township residents regarding the keeping of chickens and whether any further enforcement action was taken with respect to those other notices. (N.T. at 35-38.)

Landowner presented the testimony of Emily Shoop, a poultry educator with the Penn State Agricultural Extension Service. (F.F. No. 16.) Ms. Shoop was offered and admitted to testify, over an objection by the Township's counsel, as an expert in poultry science and the interpretation and application of local ordinances as they relate to poultry.[5] (F.F. No. 16.) Ms. Shoop testified that chickens are poultry

---

[5] Ms. Shoop stated that she is contacted "quite frequently" by individuals to review township ordinances and determine whether they "could or should get poultry," and that she has worked **(Footnote continued on next page…)**

4

and, in her opinion, they do not qualify as "farm animals" under Section 27-508.1.D of the Ordinance because they are not within the animal husbandry of the larger, hooved animals specifically referenced in that section. (F.F. No. 17.) When questioned by the ZHB, Ms. Shoop admitted that there has been an increase in avian disease transmission within the last two years, mostly due to people not washing their hands.

Landowner testified that she first started keeping chickens in the summer of 2020 and, at the time of the hearing, she had approximately 40 chickens and several roosters. (F.F. Nos. 22, 24 and 25.) She uses the eggs from her chickens as a food source for herself, her grandchildren, and her elderly neighbors, and she has never charged for the eggs. (F.F. No. 24; N.T. at 79-80.) Landowner explained that her friend and fellow Township resident, Lisa Counterman, also keeps chickens and received an enforcement notice regarding them approximately one month before Landowner acquired her first rooster. (F.F. No. 23; N.T. at 76-79.) According to Landowner, Ms. Counterman wrote a letter in response to the enforcement notice and called the Township, but never heard back, and no further enforcement action was taken by the Township. Landowner admitted that she did not seek an advisory opinion from the Township or Zoning Officer as to whether she could have chickens on the Property and that her chicken coops are approximately 10 feet from her property lines.

Several neighbors spoke favorably on behalf of Landowner, stating they did not have any issues with the chickens or odors from the Property. However, Landowner's next door neighbor testified that while he is not against Landowner

---

with several townships on the use of poultry in their ordinances. (N.T. at 54-55.) Ms. Shoop admitted, however, that she has no legal training regarding zoning ordinances.

5

keeping chickens, he does have an issue with the smell and the crowing. Further, his wife works an overnight shift and Landowner's roosters disrupt her sleep.

We also note that the ZHB refused to allow testimony from two Township residents, Phil Daily and Shelly McCarthy, because they do not live in the same neighborhood as Landowner. Mr. Daily stated that he wished to testify and ask questions because he also has chickens on his property and received an enforcement notice. Ms. McCarthy, who resides with Mr. Daily, indicated that she lives below another property that has chickens. In prohibiting their testimony, counsel for the ZHB instructed that the matter was limited to the Property in question and the specific Enforcement Notice at issue, and was not open for questions regarding the Ordinance in general.

At the conclusion of the hearing, the ZHB voted unanimously to deny Landowner's appeal and subsequently issued a written decision. The ZHB concluded that chickens and roosters are not expressly excluded from the undefined term "farm animals," and that use of the phrase "such as" in Section 27-508.1.D of the Ordinance is meant to be illustrative rather than providing a strictly limited list of qualifying animals. As such, the ZHB determined that chickens fall within the meaning of "farm animals" under the Ordinance. Because the Property lacks sufficient minimum acreage for the keeping of farm animals as an accessory use and the chicken coops are in violation of the 60-foot setback for "stables, runways or animal exercise pens," the ZHB upheld the Zoning Officer's issuance of the Enforcement Notice.

The trial court denied Landowner's appeal without taking any additional evidence.[6] Landowner also filed a motion for reconsideration, which was denied, and her appeal to this Court followed.

## II. Issues

Landowner raises the following issues on appeal: (1) whether the keeping of chickens for non-commercial egg production purposes is a permitted use under the Ordinance in the R-3 District;[7] (2) whether the ZHB is estopped from asserting that Landowner's use of the Property for raising chickens is prohibited, or if the matter must be remanded for a hearing with regard to this issue; and (3) whether the ZHB erred in refusing to take the testimony of Township residents Mr. Daily and Ms. McCarthy.

## III. Discussion

The rules of statutory construction apply to ordinances as well as statutes, and the primary objective "of statutory interpretation is to determine legislative intent." *Sabatini v. Zoning Hearing Bd. of Fayette Cnty.*, 230 A.3d 514, 520 (Pa. Cmwlth. 2020) (citing Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921). Generally, "a statute's plain language [] provides the best indication of legislative intent and, thus, statutory construction begins with examination of the text itself." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). In conducting this review,

---

[6] The Township intervened, as of course, in the appeal to the trial court. *See* Section 1004-A of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1339, 53 P.S. § 11004-A.

[7] Subsumed within this first issue is Landowner's argument that the ZHB erred by ignoring Ms. Shoop's testimony that the Ordinance is drafted in such a way as to permit raising chickens as an accessory use in the R-3 District. (Landowner's Br. at 3.)

words and phrases of zoning ordinances shall be construed according to their common and approved usage and in accordance with the rules of grammar; undefined terms in a zoning ordinance must be given their plain, ordinary meaning. 1 Pa.C.S. § 1903(a). Furthermore, a zoning ordinance shall be construed, if possible, to give effect to all of its provisions. 1 Pa.C.S. § 1921. The guiding principle in interpreting land use ordinances requires ambiguous language in an ordinance to be construed in favor of the property owner and against any implied extension of the restriction; however, such an interpretation is unwarranted where "the words of the zoning ordinance are clear and free from any ambiguity." *Borough of Fleetwood* [*v. Zoning Hearing Bd. of Borough of Fleetwood*], 649 A.2d [651,] 657[ (Pa. 1994)]; *City of Hope v. Sadsbury T*[*wp.*] *Zoning Hearing B*[*d.*], 890 A.2d 1137, 1143 (Pa. Cmwlth. 2006).

*Delchester Devs., L.P. v. Zoning Hearing Bd. of Twp. of London Grove*, 161 A.3d 1081, 1103-04 (Pa. Cmwlth. 2017) (footnote omitted).

Further, "because the zoning hearing board is the entity charged with the interpretation and application of a zoning ordinance, a board's interpretation of its own ordinance is entitled to great weight and deference." *Id.* at 1104. If that interpretation, however, "is inconsistent with the plain language of the ordinance or the meaning of the ordinance is unambiguous, the 'interpretation carries little or no weight.'" *Sabatini*, 230 A.3d at 521 [quoting *Malt Beverage Distrib. Ass'n v. Pa. Liquor Control Bd.*, 918 A.2d 171, 176 (Pa. Cmwlth. 2007) (en banc)]. An ordinance is considered ambiguous "when [its] language is subject to two or more reasonable interpretations." *City of Clairton v. Zoning Hearing Bd. of City of Clairton*, 246 A.3d 890, 903-04 (Pa. Cmwlth. 2021) [quoting *Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 483 (Pa. Cmwlth. 2006)].

Given the above, we begin with the plain language of the Ordinance. Section 27-508.1.D provides for "the keeping of customary household pets and the

keeping of farm animals for domestic use on residential lots" as an accessory use, without a permit, subject to certain requirements. Ordinance § 27-508.1.D. Landowner concedes that she does not keep her chickens and roosters as pets, and that Section 27-202 of the Ordinance specifically precludes chickens from the definition of "customary household pets." Ordinance § 27-202. Therefore, the crux of this matter is whether chickens qualify as "farm animals."

While the Ordinance does not specifically define the term "farm animals," we conclude that its meaning is easily ascertainable. The plain language of Section 27-508.1.D regarding accessory uses refers to "[t]he keeping of farm animals *such as* **cattle, horses, goats and pigs**[.]" (emphasis added). Landowner's argument that chickens do not qualify as "farm animals" because they are not *hooved* animals like those specifically mentioned, *i.e.* cattle, horses, goats and pigs, is an unreasonably strict interpretation of the language and goes against both common usage of the phrase as well as other provisions of the Ordinance. Section 27-106.1.B pertaining to interpretation of the Ordinance explicitly provides: "Any list of permitted or prohibited uses shall not be deemed to be an exhaustive list but has been included for the purposes of clarity and emphasis, and to illustrate, by example, uses which are desirable (permitted, special or conditional uses) or undesirable (prohibited uses)." Ordinance § 27-106.1.B. Simply put, the short list of animals provided is meant to be illustrative, not definitive. "[R]equiring that zoning ordinances state every conceivable impermissible use would negate the deference to which a zoning hearing board is entitled in the interpretation of its municipality's zoning ordinances," and "uses not expressly permitted in a zoning ordinance are excluded by implication." *Slice of Life, LLC v. Hamilton Twp. Zoning Hearing Bd.*, 207 A.3d 886, 902 (Pa. 2019) (citations omitted).

9

Moreover, the common understanding of the phrase "farm animals" is "animals that are raised on a farm / pigs, chickens, and other farm animals." *Farm animals*, Merriam-Webster, https://www.merriam-webster.com/dictionary /farm%20animals (last visited April 20, 2023). *See Sabatini*, 230 A.3d at 521[8] [in construing a zoning ordinance, courts "may consult dictionaries and can draw upon common sense and basic human experience" (citing *Kohl*, 108 A.3d at 969)].

While it is undisputed that Landowner uses her chickens for domestic rather than commercial purposes, we must consider the Ordinance in its entirety and the provisions regarding farms are instructive. As noted by the Zoning Officer in his testimony before the ZHB, the Ordinance's definition of "farm" includes land "used for gain in the raising of agricultural products, livestock, *poultry*, or dairy products." Ordinance § 27-202 (emphasis added). This reference, coupled with the fact that the Ordinance was amended in 2019 to expressly exclude chickens from the definition of customary household pets, reinforces the conclusion that the Township intended for chickens, e.g. poultry,[9] to come within the definition of farm animals. As noted by the trial court, "[t]he noise, smell and waste from chickens, like other farm animals, can impact neighbors in various ways" and "[t]he requirement that such animals be kept on larger parcels[] ensures that there will be less impact on surrounding property owners." (O.R. at 227.)

In addition, Landowner's interpretation of "farm animals" is simply unreasonable. Under her construction, landowners would be permitted to keep an

---

[8] We note that while *Sabatini* involved the keeping of chickens in a residential zoning district, there was substantial evidence to support the landowner's assertion that he kept his chickens as pets and the zoning ordinance did not specifically exclude having chickens as pets, as does the Ordinance at issue here. Therefore, *Sabatini* is both factually and legally distinguishable.

[9] As even Landowner's expert concedes, chickens fall within the category of poultry.

unlimited number of chickens for domestic purposes on a lot of any size in a residential zone, yet chickens used for gain or commercial purposes in an agricultural district must be on a lot of at least 10 acres. The Township could not have intended such an absurd result in enacting the Ordinance and we cannot condone such an interpretation. *See Kohl*, 108 A.3d at 970 ("in enacting an ordinance it is presumed that the legislative body did not intend a result that is absurd or unreasonable") (citation omitted).[10] Contrary to Landowner's argument, the ZHB did not ignore the testimony of her expert on this issue; rather, the ZHB simply did not credit her testimony as to the intent of the Ordinance, which was well within its province as fact finder. *See Victory Gardens, Inc. v. Warrington Twp. Zoning Hearing Bd.*, 224 A.3d 1110, 1115 (Pa. Cmwlth. 2020) (acknowledging that, as fact finder, "[t]he [zoning hearing b]oard is the sole judge of the credibility of witnesses and the weight to be afforded their testimony") (quotation omitted).

In light of the Ordinance taken as a whole, as well as common sense and basic human experience, we discern no error or abuse of discretion in the ZHB's determination that chickens qualify as farm animals under the Ordinance and that Landowner is therefore in violation of the minimum acreage requirement of Section 27-508.1.D. *See Delchester Devs., L.P.*, 161 A.3d at 1103 (where language is unambiguous, ZHB's "interpretation of its own ordinance is entitled to great weight and deference"); *City of Hope*, 890 A.2d at 1143.

---

[10] While not raised by the parties or addressed by the ZHB, it bears noting that Section 27-508.1.D of the Ordinance pertains to "[a]ccessory uses on the same lot and *customarily incidental* to the permitted use." Ordinance § 27-508.1.D (emphasis added.) It is questionable whether a reasonable person could consider keeping more than 40 chickens as customarily incidental to a residential use in a zoning district with lots under a half-acre in size. *See Hess v. Warwick Twp. Zoning Hearing Bd.*, 977 A.2d 1216 (Pa. Cmwlth. 2009) (holding township "supervisors cannot have contemplated[,] nor that any reasonable person could conclude, that as many as [21] dogs could be considered customarily incidental" to landowner's residential use).

11

Next, Landowner argues that the trial court erred in affirming the ZHB because the Township is equitably estopped from enforcing the Ordinance with respect to the raising of chickens as an accessory use.[11] Landowner maintains that she relied, in good faith and to her detriment, on the Township's inaction with respect to Ms. Counterman's prior enforcement notice regarding the keeping of chickens on her residential property for domestic purposes. In the alternative, Landowner asserts that the matter should be remanded so that additional evidence can be taken in this regard. We disagree in both respects.

Equitable estoppel in the realm of zoning law "is an unusual remedy granted only in extraordinary circumstances[.]" *Vaughn v. Zoning Hearing Bd. of Twp. of Shaler*, 947 A.2d 218, 225 (Pa. Cmwlth. 2008).

> To establish equitable estoppel, a landowner must prove that "the municipality intentionally or negligently misrepresented its position with reason to know that the landowner would rely upon the misrepresentation." [*Lamar Advantage GP Co. v. Zoning Hearing Bd. of Adjustment of City of Pittsburgh*, 997 A.2d 423, 441 (Pa. Cmwlth. 2010)]. Additionally, the landowner must establish the following elements of good faith action on h[er] part: "'1) that [s]he relies to h[er] detriment, such as making substantial expenditures, 2) based upon an innocent belief that the use is permitted, and 3) that enforcement of the ordinance would result in hardship . . .

---

[11] In its opinion denying Landowner's appeal, the trial court notes that her "application to the ZHB did not raise equitable estoppel or variance by estoppel, but we will nonetheless address both since briefed by [Landowner]." (O.R. at 227.) While this statement is technically correct as Landowner's application does not explicitly use those terms, the application does provide the reasons for her request as "[l]ack of uniform enforcement; improper interpretation of ordinance; no violation exists," and notes generally that she is challenging the enforcement notice. (*See* O.R. at 24.) Moreover, Landowner raised the issue of estoppel during the hearing before the ZHB, she addressed it in all of her briefs throughout the appeal process, and both the ZHB and the trial court addressed it in their respective decisions. As such, we find that the issue has been properly preserved.

12

."' *Id.* (quoting *Vaughn*[,] 947 A.2d [at] 224-25). . . . A landowner must prove these essential factors by clear, precise, and unequivocal evidence. *See Pietropaolo v. Zoning Hearing Bd. of Lower Merion Twp.*, 979 A.2d 969, 980 (Pa. Cmwlth. 2009).

*Victory Gardens*, 224 A.3d at 1115.

Here, Landowner admittedly did not communicate directly with the Township beforehand, nor seek approval at any point for her keeping of chickens. While Landowner points to her friend's – Ms. Counterman's – claim that the Township failed to follow up on *her* enforcement notice for keeping chickens in a residential district, a landowner must demonstrate conduct or representations made by the municipality itself in order to establish an estoppel claim, not statements made by "third parties who do not speak for the municipality." *Skarvelis v. Zoning Hearing Bd. of Borough of Dormont*, 679 A.2d 278, 283 (Pa. Cmwlth. 1996) [citing *Schaefer v. Zoning Bd. of Adjustment of City of Pittsburgh*, 435 A.2d 289, 292 (Pa. Cmwlth. 1981)]. It is undisputed that no representation was ever made to Landowner directly, let alone a misrepresentation upon which the Township knew she would rely. Moreover, knowledge of a zoning violation or the mere passage of time is not enough to demonstrate estoppel; instead, a municipality must have committed some affirmative act "which would reasonably lead a property owner to conclude that the proposed use was sanctioned under the law." *Skarvelis*, 679 A.2d at 281 (listing cases where municipalities took affirmative steps which resulted in a finding of estoppel). Here, there is no evidence of action on the part of the Township which would constitute "active acquiescence" towards Landowner's continued keeping of chickens. *Id*. at 282. Nor was there a long period of inaction as the Zoning Officer inspected the Property shortly after receiving the complaint and issued the Enforcement Notice promptly after completing this inspection. *See, e.g.*,

13

*Victory Gardens*, 224 A.3d at 1116-17 (noting period of at least 14 years wherein township repeatedly confirmed landowner was allowed to conduct its mulching operation). Any purported inaction by the Township regarding Ms. Counterman is not determinative since "a failure to uniformly enforce an ordinance provision does not preclude subsequent enforcement of the same." *Zajdel v. Bd. of Supervisors of Peters Twp.*, 925 A.2d 215, 219 (Pa. Cmwlth. 2007). Given Landowner's inability to demonstrate several crucial elements of estoppel, we discern no error in denying her appeal in this regard and find it unnecessary to remand for additional evidence on this issue.

Finally, Landowner maintains that the ZHB erred in denying two Township residents the ability to testify, arguing that they live in close proximity to Landowner and therefore meet the requirements for standing. However, there is evidence in the record demonstrating that these individuals live several miles away in a different neighborhood. (N.T. at 44.) More importantly, when given an opportunity to explain why they wanted to testify, Mr. Daily indicated that they were impacted because they also have chickens and received an enforcement notice. Mr. Daily explained that he wanted to make inquiries to the ZHB regarding his enforcement notice and ask questions regarding the Zoning Officer's interpretation. Given these facts and statements, we discern no error in the ZHB's decision to prohibit the testimony of Mr. Daily and Ms. McCarthy because they are not affected by Landowner's application. *See* Section 908(3) of the Pennsylvania Municipalities Planning Code, 53 P.S. § 10908(3) ("parties to the hearing shall" include "any person affected by the application who has made timely appearance of record before the board"); *Armstead v. Zoning Bd. of Adjustment of City of Phila.*, 115 A.3d 390 (Pa. Cmwlth. 2015) (en banc).

14

For all the foregoing reasons, we affirm.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Dawn Welsh,                                  :
                    Appellant           :
                                             :
          v.                             :     No. 265 C.D. 2022
                                             :
Zoning Hearing Board of Stroud           :
Township                                 :

# **O R D E R**

AND NOW, this 21st day of April, 2023, the order of the Court of Common Pleas of Monroe County is hereby AFFIRMED.

_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita